No. 13,087.

FRANK M. WELCH VS. HENRY S. GOSSENS ET ALS.

SYLLABUS.

The provisions of the legislative charter of a municipal corporation, with regard to the election of its officers, is not impliedly repealed by the provisions of a subsequently enacted general election law, which makes no mention thereof.

Where there exists positive legislation upon the same subject matter, providing for the very case in hand, it must be interpreted as not having been repealed by a subsequent enactment which contains *different* provisions, but not those *contrary* thereto.

ON APPEAL from the Tenth Judicial District Court for the Parish of Rapides. *Hunter, J.*

---

*H. H. White* and *Robt. P. Hunter* for Plaintiff and Appellant.

---

*John C. Ryan* for Defendants, Appellees.

---

Argued and submitted February 10, 1899.
Opinion handed down March 20, 1899.
Judgment modified and rehearing refused April 17, 1899.

---

On application for rehearing by BREAUX, J.

The opinion of the court was delivered by

WATKINS, J.  The plaintiff takes this appeal from the judgment dismissing his suit contesting the election of the plaintiff as mayor of Alexandria.

The petition alleges, that plaintiff and defendant were candidates for the office of mayor of Alexandria; that plaintiff received a plurality of the votes cast, but was deprived in the count of a number of the ballots in his favor, resulting in giving to his competitor the election, according to the returns.  The petition then proceeds to assail the election as not held in accordance with the Constitution and law, but under laws superceded by the Constitution of 1898; and if there had been an election, it was without result, the town charter of Alexandria requiring a majority of all the votes cast to elect, and that no candidate received such majority.  The prayer of the petition is, that the ballots cast for him be counted; that he be decreed elected mayor of Alexandria; and, if the court should find there has been no election, that an election in accordance with the Constitution and laws be ordered.

The defendant answered with the general issue, and by pleading that plaintiff is estopped from disputing the legality of the election, having been a candidate and a participant in the election.

The count of the votes ordered by the court was adverse to the plaintiff, and that issue is withdrawn from the discussion in this court.

The contention of the plaintiff is that the defendant not having received a majority of the votes was not elected; and that if it be held, that a plurality was sufficient to elect, it is insisted the election was not held in accordance with the law.

Section 2 of Act 111 of 1868, "to incorporate the town of Alexandria," was introduced in evidence by the plaintiff.

But, while admitting the force of this statute, the contention of the defendants' counsel is, that same was repealed by the provision, which is contained in section 7 of Act 152 of 1898.

The act referred to is the general election law, and the provision relied upon is of the following tenor, viz.:

"That in all elections by the people, the person or persons having "the *highest number of votes,* shall be deemed and declared to be "elected, etc."  (Our italics.)

The repealing clause of that statute declares, "that all laws or parts

" of laws contrary to or in conflict with the provisions of this act, are " hereby repealed." *Id.*, Section 81.

The defendant in his answer avers, that the plaintiff "is estopped " from denying the legality of the laws under which the said election " was held, even if illegal, which is denied, having participated in the " election, and submitted his name as a candidate."

We are of the opinion that the plaintiff is neither estopped from alleging that no election, at all, was held, nor if an election was held, that the defendant, Gossens, was not legally chosen thereat as mayor of Alexandria, by reason of the fact of his candidacy for that office. Notwithstanding his own defeat, he has the right to assert in a court of justice that his adversary was likewise defeated because he failed in obtaining a majority of votes, as required by the city charter; and, by this means, reopen the controversy and obtain another chance of being himself elected.

Recurring to the principal question, whether the general election law of 1898, had the effect of repealing the legislative charter of the city of Alexandria of 1868, we find the current of decision in opposition to that theory.

It is a well-recognized canon of construction, that a statute of a general nature does not repeal a particular statute which has been enacted for the benefit of a public corporation as a part of its charter. We have an instance of that kind stated in Douglas vs. Craig, 2nd Ann., 919, of which the court said:

"In 1839, the legislature granted to the corporation of Shreveport " the exclusive right of establishing ferries across Red river, within " the limits of that town, and to the revenues arising therefrom.

"In virtue of this authority, the corporation established a ferry " within its limits, of which the plaintiff is the lessee, running to the " opposite shore, which is one of the boundary lines of the parish of " Bossier.   In 1843, the parish of Bossier was created; and among the " powers granted to its police jury was that of establishing ferries " across the lakes and rivers within that parish.   A ferry was estab- " lished under this authority across Red river, immediately opposite " to the town of Shreveport, and leased to the defendant, who was " using it for purposes of profit, when he was restrained by an injunc- " tion obtained by the plaintiff, who claims the exclusive privilege of a " ferry at that point, etc."

With regard to the controversy thus outlined, the court said:

"The exclusive right granted to the corporation of Shreveport to
" establish ferries across the Red river within its limits, was not re-
" pealed by the subsequent act of 1843, creating the parish of Bossier.
" There is no *express* repealing clause in the latter act, and we do not
" understand that the legislature, in creating a parish, and conferring
" upon its local authorities the powers which they would equally have
" had under the general law if those powers had not been specially
" granted, intended to repeal this special privilege given to the cor-
" poration. There is no conflict between the two acts. They both
" exist, and must be construed together. The power to establish fer-
" ries granted to the police jury of Bossier, must be subordinate to that
" conferred upon the town of Shreveport within the corporate limits-
" of the latter."

The case of Bank of Louisiana vs. Farrar, 1st Ann., 49, rests upon
a like principle.

As applicable to the question of an implied repeal of a criminal.
statute the court stated in State vs. Lewis, 3 Ann., 398, that:

"As there has been no *express* repeal of the Act of 1843, a repeal is
" only implied in so far as the last act contains provisions contrary to,
" or irreconciliable with those of the first. C. C., Art. 23. The repeal
" of prior laws by those subsequently enacted is not to be presumed,
" although the latter may contain provisions different from the for-
" mer. To produce the effect of a repeal, in the absence of positive
" enactment, the provisions of the respective laws must be clearly re-
" pugnant. The silence of the legislature in relation to powers con-
" ferred by the first act, is not to be construed into an intention to
" abrogate them."

That discussion had reference to two general statutes upon ident-
ically the same subject matter.

Where it is readily possible, two different statutes upon the same
subject matter should be construed so as to harmonize their provisions.
Waldo vs. Bell, 13th Ann. 329.

In Saul vs. His Creditors, 5 N. S., 569, the court put the proposition
very forcibly and in very few words.

"But," say the court, "where there already exists positive legislation
" on the same subject matter, providing for the very case which it is
" presumed is excluded, the argument loses almost entirely its weight.
" The law must then be interpreted by a well known rule of jurispru-
" dence, that an intention to repeal laws can never be supposed; that-

"subsequent statutes do not abrogate former ones by containing *different* provisions on the same subject; they must be *contrary* to produce such effect."

In Albert vs. Brewer, 9th Ann., 64, the plaintiff enjoined the collection of a license tax from him as keeper of a coffee-house, on the ground that the law under which it was levied had been repealed, the subsequent enactment of a general revenue law providing for the assessment and collection of taxes, which statute contained a clause to the effect that all laws or parts of laws upon the same subject matter are thereby repealed.

The court said:

"The object of this act"—the alleged repealing statute—"was to provide for the assessment and collection of taxes. The repealing clause must be interpreted with reference to that object, and can not reasonably be extended to a statutory enactment imposing a tax like the enactment in question."

In Succession of Fletcher, 12th Ann., 496, it was held that it "is only where there is an *obvious* and *necessary inconsistency* of the provisions of two statutes, that (the former) must be considered as repealed."

In Bond vs. Hiestand, 20 Ann., 139, the court applied the foregoing principle to an alleged implied repeal of a special statute.

"The law of 1859," said the court, "aforesaid, is a *special statute,* forming part of the charter of the city of New Orleans, and can not be considered as repealed unless *expressly,* or by conflicting legislation *in pari materia.*

"Subsequent laws do not repeal former ones by containing different provisions; they must be contrary. 5. N. S., 528; 6. La., 135; 16 Ann., 379.

"A particular law is not repealed by a general law, unless they be *so repugnant that both can not stand under any circumstances."*

The same principle is announced in State vs. Labatut, 39 Ann., 514.

In State vs. Natal, 39th Ann., 439, the court said:

"The legislature did not, however, formally cancel its provisions"—those of a former charter—"although it changed the form of the municipal government.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

"By irresistible and clear implication, this (action) contemplates in effect, the maintenance and continuation in (force) of *special laws*

" not falling within the purview of the act—namely, not conflicting " with it."

In St. Martin vs. City of New Orleans, 14th Ann., 113, it was held, that "the minute and particular provisions of one act, prescribing the " salary of the register of voters in the city of New Orleans, are not " repealed by a general grant of power in another act, to the common " council in relation to all city salaries."

In Blanks vs. Mayor, 47th Ann., 613, we had under consideration this question and held that "the legislative charter of a municipal " corporation being a special act, apart from the body of general laws " of the State, it can not be repealed by a general law of the State, " unless that intention clearly appears from the terms of the general " act; and that the general act shall repeal the special law, it must " appear that the provisions of the former are irreconcilably incon- " sistent with those of the latter."

State ex rel. City vs. Judge, 40th Ann., 844.

State ex rel. Cittarotto vs. Judge, 37 Ann., 574.

To clearly indicate the force of the principle which underlies all of the foregoing authorities, we particularly refer to the views expressed on this subject in Mayor and Council of Alexandria vs. White, 46th Ann., 449, in which the court, speaking through Mr. Justice Miller as its organ, said:

"The defendant contends, on the contrary, that the charter of Al- " exandria should have been amended under Act 110 of 1880, provid- " ing for amendments to charters of towns or cities; and, it is urged, " it was by such amendment, the power to tax occupations could have " been conferred upon the plaintiff.

"While under the Act of 1880, the town might have obtained the " necessary amendment conferring the power to exact licenses, still " the competency of the legislature by general act to deal with the " subject is, in our view, undoubted.

"Again, the defendant urges that the charter of Alexandria being " special legislation, is not to be deemed affected by provisions ap- " plicable to towns generally contained in the revenue acts of 1886 " and 1890. But the express purpose of the provisions of the revenue . " laws under consideration was to supplement with the right to tax " occupations, the powers of all parochial and municipal corporations " not clothed with that right by their charters. The charter of Alex-

" andria *not conferring any taxing power in respect to occupations,* " was clearly within the scope of the provisions in the revenue acts."

But it will be observed that, in that case, there was no question of an implied repeal of a special law by the enactment of a general stat- ·ute; but, it simply recognized the power of the legislature by the en- actment of a general law with regard to all towns, to confer upon any one of them power of taxation which it did not possess under its· charter.

In our opinion the provisions of the general election law of 1898 can not be considered to have repealed the provisions of the charter of the town of Alexandria of 1868, relative to the election of mayor, aldermen, treasurer and comptroller; for the reason that the former contains no provision that is plainly indicative of that purpose. Con- sequently, while the provisions of the former are *different* to those· of the latter act, they are not *contrary* thereto; and that is the test of all the decisions we have consulted and referred to.

Section two of the charter of Alexandria declares in express terms, that there shall be chosen by ballot, the officers specified, "who shall, " when elected by a *majority of the votes of the whole city,* enter upon " the discharge of the duties of their respective offices, etc," whilst the· terms of the election law of 1898 are "that in all elections by the peo- " ple, the person or persons having the *highest number of votes,* shall " be deemed and declared elected."

An inspection of the title of the act, and the tenor of its text dis- closes clearly that it was a general law relative to State, congressional and parochial elections; and that it was not the clearly expressed in- tention of the legislature to take from any municipality a power which had been expressly conferred by its charter.

The general election law of 1896 contains a similar provision to that of the law of 1898, viz.: "In all elections by the people, the person or· " persons having the *highest number of votes,* shall be declared, and " deemed to be elected;" and its repealing clause is similar.

Section 7 of Act 137 of 1896.

Similar provisions occur in previous election laws. Indeed, such has been the character of all general election laws of the State; hence, the argument in favor of the repeal of the charter of Alexandria by the enactment of one, is just as applicable to any other. But, it seems that elections have been conducted under the charter in prev- ious years without complaint on the score of its implied repeal.

Welch vs. Gossens et als.

The rule is that "the provisions of the charter as to time and mode " of election, the appointment, qualification, and duration of the terms " of officers, must be strictly observed;" and the laws applicable thereto must be strictly construed.

1 Dillon's Munic. Corp., Sec. 146.

It appearing from the record that the defendants, Gossens and associates, only received a plurality of votes, and not a majority, as required by the charter, and were not elected mayor and aldermen, etc., consequently, the election must be declared void; and, as a necessary consequence, another election must be held according to law.

It is therefore ordered and decreed, that the judgment appealed from be annulled and reversed; and it is further ordered and decreed, that the election at which the defendant claimed to have been elected be declared illegal, null and void, and that another election for the various offices named be had and held in conformity to law and the charter of the town of Alexandria, and that the defendants be taxed with all costs of both courts.

## ON APPLICATION FOR REHEARING.

BREAUX, J.

1. In answer to defendants' position that Act of 1868, No. 111, requiring the mayor to receive a majority of the votes cast, is repealed by Section 7 of the statutes of 1898 relative to elections, we can only reiterate that the special law was not repealed by the statute. That a statute framed in general terms or treating the subject in a general way not contradicting the first act is not to be regarded as affecting a more particular or positive previous clause; that repeals by implication are not favored usually. The idea is that statutes drawn up with attention and care (*hujus modi statuta tanta solemnitate et prudentia edita*) shall be supported, until they are repealed by a repealing statute, or by implication arising from the context of a statute. Carrying out that view, it has been held, that the special exemption of particular property from municipal taxation is not repealed by subsequent general statute, taxing all property, there being no express repeal. That a special charter of statutes prevails over the general law. Burke vs. Geffries, 20 Ia., 145. A case having some similarity to the case before us.

In the former particular statute or charter of Alexandria, the word

Police Jury, Sheriff and Tax Collector vs. Bouanchauld & Co. and Others.

"majority" is used, and in the general statute of 1898, "plurality." Nothing suggests difficulty in carrying out the particular statute in a municipality in matter of electing officers, nor does there arise any "irreconcilable inconsisstency" between the two statutes. Though it is settled that statutes may be repealed by implication, and without express words, still, the courts lean against the doctrine, if it be possible to reconcile the two acts of the legislature together.

2. On the part of the aldermen, treasurer and comptroller, defendant insists that the judgment should not be made to apply to them. The suit, it appears, is between Welch and Gossens; there are no other parties before us; and we are, in consequence, asked to eliminate and exclude from the affects of the judgment the aldermen, treasurer and comptroller. It being a fact that they were not parties, our decree should not affect their right in any manner. But, to make things entirely clear, and remove them from all doubts, an amendment will be made to clear away any adverse impression in regard to their tenure, restricting our decree entirely to plaintiff and defendant, parties to the suit.

It is, therefore, ordered, adjudged and decreed that our original decree remain unchanged, save as to the aldermen, treasurer and comptroller; they not being parties are eliminated as before stated.

With this modification of our decision, the application for a rehearing is refused.

Mr. Justice MONROE not having been a member of this court when the case was submitted, takes no part in this opinion.