207 So.2d 583 (1968)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Luella Boutte BLACK et al., Defendant-Appellant.
No. 2181.
Court of Appeal of Louisiana, Third Circuit.
February 28, 1968.
*584 William E. Logan, Jr., Lafayette, for defendants-appellants.
D. Ross Banister, Chester E. Martin, Braxton B. Croom, Jesse S. Moore, Jr., Johnie E. Branch, Jr., by Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellee.
Before FRUGE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is an expropriation suit instituted under the provisions of LSA-R.S. 48:441 et seq. by the State of Louisiana, through the Department of Highways, against Mrs. Luella Boutte Black. The suit was filed and the order of expropriation was issued on September 17, 1965. The property being expropriated comprises 17.568 acres, that being a portion of a larger tract owned by defendant in Iberia Parish, Louisiana.
*585 The State deposited $45,528.00 in the registry of the Court as just compensation for the property being taken. Defendant filed an answer claiming that the amount deposited is inadequate, that she is entitled to a substantially larger sum for the property expropriated, and that she is entitled to an award for severance damages and for the cost of surfacing a new frontage blacktop road. Judgment on the merits was rendered by the trial court awarding defendant the sum of $53,388.00 for the property taken, plus $1,297.25 for expert fees, making a total award of $54,685.25, subject to a credit for the amount which previously had been deposited. The defendant landowner has appealed.
Prior to the taking defendant owned a tract of land comprising about 40 acres, which was bounded on the east by a paved highway known as the Weeks Island Road. The property had a frontage of 948.82 feet on this highway. Plaintiff, by this action, is taking 17.568 acres of that 40 acre tract. The property being taken is irregular in shape, and it includes all of that part of the original 40 acre tract which fronted on the highway. The land taken is to be used as the right of way for a new four lane highway and for a service road which will connect the Weeks Island Road to that highway. Defendant's remaining property will have access to this service road.
Four expert real estate appraisers testified at the trial, two of whom testified in behalf of plaintiff and two testified for the defendant. All of these appraisers used the market data approach in estimating the value of the land taken, and all based their opinions as to value on prior comparable sales. Each appraiser concluded that that portion of defendant's property which fronts on the highway, extending from the highway to a depth of 200 feet and comprising a total of 4.356 acres, was best suited for rural homesite purposes. There was some buildings and other improvements located on this frontage property which would have to be removed or destroyed, and both parties agree that defendant is entitled to be compensated for those improvements.
The remainder of the property which is being expropriated, comprising a total of 13.212 acres, is located behind or to the rear of the above mentioned frontage property. About one-half of this rear property was being used for raising sugarcane, and the other half was being used for pasturage purposes at the time of the taking. A sugarcane crop was growing on a part of the rear property at the time this suit was instituted. There were no trees on the six or seven acres of the rear property which were being used for agricultural purposes, but there were trees on the remaining portion of the rear property which was being used as a pasture.
After trial of the case on the merits, the trial judge determined that defendant was entitled to the following awards:

Front acreage of 4.356 acres $14,232.00
Rear acreage of 13.212 acres 13,212.00
Improvements 25,734.00
Sugarcane stubble 210.00
Expert Fees 1,297.25
 __________
 TOTAL $54,685.25

No issue is raised on this appeal as to the award of $14,232.00 made by the trial court for the taking of the front acreage of 4.356 acres, or as to the award of $25,734.00 made by the trial court as compensation for the improvements.
Defendant contends, however, that the trial judge erred in finding that "all four appraisers considered the existence of trees in arriving at their value of the rear acreage." She argues that some of the appraisers, and particularly the appraiser whose estimate of the value of the rear 13.212 acre tract was accepted by the trial judge, failed to consider the trees in determining the value of that tract. She claims that the rear property has a value of $2,000.00 per acre, instead of $1,000.00 per acre as allowed by the trial court, and that she thus is entitled to have the award for the *586 rear property increased from $13,212.00 to $26,424.00.
Mr. Sam Kennedy, one of the real estate experts called by plaintiff, was of the opinion that the entire 17.568 acres being taken had a value of $1,200.00 per acre. He did not value the frontage property separately from the rear 13.212 acres. The trial judge did not accept his opinion as to the value of the property, since the court concluded that a separate appraisal and award should be made as to the frontage property.
All of the other real estate experts who testified in the trial valued the frontage property, comprising 4.356 acres, separately from the rear property. As we have already noted, no issue is raised on this appeal as to the awards made by the trial court for the frontage property. Mr. Arthur Fleming, an expert called by plaintiff, concluded that the rear 13.212 acre tract was best suited for agricultural purposes, and he estimated that it had a market value of $600.00 per acre. Mr. Allen Angers, a real estate expert called by defendant, estimated the value of the rear 13.212 acres at $1,000.00 per acre. And, Mr. Preston J. Babineaux, another appraiser called by defendant, felt that seven acres of the rear property, being that part which was used for pasturage purposes, had a value of $1,450.00 per acre, and that the remaining portion of the rear property had a value of $1,200.00 per acre.
The trial judge, after considering all of the evidence, accepted the opinion expressed by Mr. Angers, one of the experts called by defendant, and he concluded that the rear property had a value of $1,000.00 per acre. In arriving at that conclusion the trial judge specifically noted that "there are a considerable number of bearing pecan trees on it," that the pasture contains pecan and oak trees, that the market value of ordinary sugarcane or pasture land "is about $500.00 per acre," but that "because these two areas are close to the City of New Iberia, on a fine highway, in a section that is fast developing * * * they are worth more than ordinary sugarcane or pasture land." He also observed that "all four appraisers considered the existence of these trees in arriving at their estimates," and that "with the many fine trees that it has on approximately one-half of it," the appraisal made by Mr. Angers of $1,000.00 per acre is well justified.
As defendant correctly points out, Mr. Angers stated "I assigned no special valuation to the pecan grove." In view of this statement, defendant argues that Angers did not consider the fact that the trees on the pasture land enhanced the value of the rear property. Our interpretation of the testimony of this expert is that he did not appraise or value the pecan trees separately from the land. We cannot agree with the interpretation placed on his statements by defendant, and we thus conclude that the trial judge did not err in finding that Angers, as well as the other appraisers who testified, considered the trees in estimating the value of the rear property.
The trial judge makes it clear in his written reasons for judgment that he considered the trees in determining the value of the rear property. Our interpretation of the evidence carefully and we agree with his conclusion that that portion of the property taken had a value of $1,000.00 per acre, or $13,212.00, at the time of the taking.
Defendant contends further that the trial judge erred in concluding that "pecan trees are not growing crops," and in failing to award her an additional sum of money for the "aesthetic value of planted trees" and for the "net value of pecan crop" on the rear property.
The evidence shows that there were a total of 76 trees on the entire 17.568 acre tract, including 14 oak trees, 46 pecan trees and a lesser number of pear, fig, hackberry, pine and persimmon trees. Some of these trees were located on the 4.356 acre frontage property, and the remainder of them were located on that part of the rear property which was used for pasturage purposes.
Dr. James A. Foret, an expert in horticulture who testified in behalf of defendant, *587 inspected and appraised these trees. He testified that many of the pecan trees on defendant's property were seedlings, and that "there was only one pecan tree in the entire area that I felt was a planted, or I could ascertain was a grafted * * * tree." He made a survey which showed only 35 trees on the entire 17.568 acre tract to which he could assign some value for the production of fruit or for shade tree purposes. He apparently did not consider the seedling pecan trees as having any significant value, because he omitted from that survey every pecan tree which he could determine definitely was a seedling. Fifteen of the trees which were listed in this survey were located on the 4.356 frontage property, and defendant concedes that those trees were considered by the appraisers and by the court and that their value was included in the award made for the frontage land. Only 20 of the trees listed in this survey were located on the rear 13.212 acre tract. Fourteen of these were pecan trees, three were oak and three were pear trees.
Dr. Foret testified that in his opinion the trees which were located on the rear property and which were included in his survey had a value of $2,360.00 as income producing trees, and that they had an additional aesthetic value or ornamental value of $1,205.00, making a total value of $3,565.00. He stated that the market value of the trees would be limited to their value as lumber, that they actually had no "marketability," and that "in fact, they would be a liability." Defendant contends that she is entitled to recover the income producing value and the aesthetic or ornamental value of the trees on the rear property, as estimated by Dr. Foret.
We think the large trees which were growing on defendant's rear property constitute a part of the land, and defendant is not entitled to an award for the value of those trees separate from the award made for the land. The income producing value of these trees, their usefulness or worth as shade trees, or the aesthetic or ornamental value of such trees, may be considered in determining the value of the land on which they are located. But, since the trees involved here are not nursery stock which can be dug from the soil, sold and replanted, and since they were not planted or cultivated on the property for that purpose, they cannot be considered or treated as a "growing crop," or as a "special crop," and an award for the trees, separate from the land, cannot be made. See State of Louisiana Through Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881 (1955); State Through Department of Highways v. Matise, 170 So.2d 709 (La.App. 1st Cir. 1964).
Defendant relies on the case of State Through Department of Highways v. Henderson, 138 So.2d 597 (La.App. 3d Cir. 1962), to support her argument that the trees may be considered as a growing crop. We do not consider that case to be applicable here. The property taken in that case was being used as a nursery, and the trees located on that property were small trees which constituted the nursery stock. They were planted and cultivated on that property for the purpose of being dug from the soil, sold and replanted. We held that in such a case the nursery stock should be treated as a crop, and that damages could be allowed for the value of the nursery stock separate from the land. In the instant suit, unlike the facts presented in the Henderson case, the trees are not nursery stock, they cannot be dug from the soil and replanted, and they have no market value separate from the land.
We concur in the conclusion reached by the trial judge that "trees are not growing crops that can be taken from the land and harvested from year to year," and that in this case an award cannot be made for the trees separate from the land on which they are located.
Defendant contends next that the trial judge erred in failing to award her the additional sum of $1,365.00 as the value of a crop of sugarcane which was growing on the rear 13.212 acre tract at the *588 time of the taking. The evidence shows that there was a growing crop of sugarcane on this rear property at that time. By agreement between defendant and the State Highway Department, however, the defendant was permitted to harvest and retain the sugarcane, notwithstanding the fact that title to the crop technically became vested in the State from and after the time the order of expropriation was signed. Defendant argues that although she harvested the crop and retained the sums received from the sale, she merely rendered a service for the State in doing so, because the State would have had to destroy the crop in order to begin construction on that land. She takes the position, therefore, that the harvesting and marketing of the sugarcane should not preclude her from recovering the market value of the crop.
We find no merit to this demand of the defendant landowner. As correctly observed by the trial judge, if an additional award should be made to defendant for the net value of the sugarcane crop after she had been permitted to harvest and sell the same crop, "the landowners would be twice receiving payment for it." We conclude that defendant has been paid the full value of the growing crop by being permitted to harvest and retain the crop itself, and that she has accepted that payment. She, therefore, is not entitled to recover an additional sum of money for the sugarcane crop.
Defendant contends next that the trial court erred in refusing to award her the sum of $2,600.00 as severance damages. The State plans to construct a four-lane highway over and across the property expropriated, and to construct a service road along that highway for the convenience of local traffic. The service road will cross defendant's property, and access from the road to her property will be permitted. The evidence shows that the announcement of the proposed construction of this highway, in itself, has greatly increased the value of the property which will about that highway. It also shows that defendant's property will have more frontage on the service road than it had on the original Weeks Island Road. Since the remainder of the defendant's property will have substantial frontage on the service road which is to be built, three of the four real estate experts who testified at the trial, including Mr. Angers, who was called by defendant, concluded that no severance damage would be sustained by defendant as a result of the taking, or that if there was some damage to the remainder it was more than offset by the special benefits which the remaining property will receive from the improvement. See Parish of East Baton Rouge v. Edwards, 119 So.2d 175 (La.App. 1st Cir. 1960).
Mr. Babineaux, the other appraiser called by defendant, is the only expert who felt that severance damages would be sustained. He concluded that defendant's remaining land would be depreciated by the sum of $2,600.00, but he stated that he based that conclusion on the assumption that "there would be no service road." He conceded that some of the severance damages which he had estimated would be eliminated if such a service road should be built, with access to defendant's remaining property.
Defendant argues that the expectation that her property will have frontage along a service road, and thus that its value will be enhanced, cannot be considered in this case, because no such service road had been constructed and none existed as of the date of the trial. She points out that under the provisions of LSA-R.S. 48:453, "damage to the remainder of the property is determined as of the date of the trial." She contends that since severance damages must be determined as of the date of the trial, and since no service roads had been constructed and none were in existence on the date of the trial, she is entitled to an award of severance damages based on the fact that her remaining property did not have access to any highway or service road. It is argued that if LSA-R.S. 48:453 is construed to mean that the damages to her *589 remaining property may be determined as of some future date after the trial, then it will have the effect of depriving her of her rights under LSA-R.S. 48:453 and under Article 1, Section 2, of our state constitution, which provides that no property shall be taken or damaged for public purposes until after just and adequate compensation is paid.
We believe that when the provision to the effect that "damage to the remainder of the property is determined as of the date of the trial" was included in LSA-R.S. 48:453, the Legislature assumed that the trial would not take place until after the construction of the highway improvements had been completed. See LSA-R.S. 48:451. The jurisprudence of this state, however, is now settled to the effect that the defendant landowner whose property has been expropriated under LSA-R.S. 48:441 et seq., may have his demand for severance damages tried before the project has been completed. State, Department of Highways v. Huson, 166 So.2d 3 (La.App. 2d Cir. 1964); State Through Department of Highways v. Williams, 131 So.2d 600 (La.App. 3d Cir. 1961); State Through Department of Highways v. Reuter, 175 So.2d 316 (La.App. 4th Cir. 1965). In either event, whether the trial is conducted before or after the highway construction has been completed, the defendant landowner has the burden of proving the amount of the severance damages which he has sustained or will sustain. If the defendant elects to demand full compensation, including severance damages, prior to completion of the highway project, he must assume some of the risks or loss because of the speculative factors involved in an earlier determination of his severance damages. He nevertheless may have his demand for severance damages tried prior to completion of the project, and when he does the burden rests on him of proving to the degree of certainty required by law what his severance damages will be upon the completion of the project.
In our opinion the interpretation or application of LSA-R.S. 48:453 in such a manner does not violate the provisions of Article 1, Section 2, of our state constitution. The state is required to deposit "the amount of money estimated to be just and adequate compensation for the taking, showing any estimate of damages as a separate item." LSA-R.S. 48:442. We think this includes a deposit for estimated or anticipated severance damages. The Highway Expropriation Act (Act 107 of 1954; or LSA-R.S. 48:441-48:460) was enacted pursuant to the provisions of Article 6, Section 19.1, of the Louisiana Constitution (Act 548 of 1948, ratified on November 2, 1948). It is now settled that in view of this constitutional provision the "quick taking" procedure set out in LSA-R.S. 48:441 et seq. is valid and constitutional, and it does not violate Article 1, Section 2 of our state constitution. State Through Department of Highways v. Macaluso, 235 La. 1018, 106 So.2d 455 (1958); State Through Sabine River Authority v. Phares, 245 La. 534, 159 So.2d 144 (1964).
We have reviewed all of the evidence and we think it supports the conclusion reached by the trial judge that defendant will sustain no severance damage as a result of the taking and construction of the proposed highway improvements.
Finally, defendant contends that the fees of Mr. Angers and of Mr. Babineaux, the two real estate experts who testified in behalf of defendant, should be increased. Mr. Angers testified that he had submitted a bill to defendant of $550.00 for preparing for the trial, and that a portion of that fee has been paid by defendant. Mr. Babineaux testified that his agreed fee of $750.00 was paid by defendant. Each of these appraisers stated that they expected to receive a fee for giving expert testimony, in addition to the charges which they made for preparation for the trial.
The trial judge allowed each of these appraisers a fee of $100.00 for testifying in court and an additional fee of $250.00 for *590 preparing for the trial, making a total fee of $350.00 allowed for each of these appraisers. These fees were taxed as costs in the suit. In fixing the fees in these amounts, the trial judge said:
"Of course, when the fees of experts are taxed as costs, the Court determines these amounts. They must be based on what the Court believes them to be and not what the experts themselves claim. The assistance that the services render the Court should govern their amounts when they are taxed as costs.
"Here, it appears that a fee of $100.00 per day for testifying in court should be ample remuneration for each of the appraisers. A fee of $250.00 for the preparation of their work likewise appears to be fair.
"Therefore, the fees of Mr. Babineaux and Mr. Angers should be fixed at $350.00 each."
A witness who is qualified and who testifies as an expert in a trial is entitled to additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning a skill required. LSA-R.S. 13:3666; State Through Department of Highways v. Salemi, 249 La. 1078, 193 So.2d 252 (1967); State Through Department of Highways v. Brammer, 160 So.2d 355 (La. App. 3d Cir. 1964). Such an expert witness is entitled to reasonable compensation for his appearance in court and for the preparatory work done by him, but the fees allowed him must be reasonable and somewhat in line with the fees heretofore allowed by the courts of this state. State Through Department of Highways v. Babineaux, 189 So.2d 450 (La.App. 3d Cir. 1966).
The awarding of expert fees is a matter which rests largely within the discretion of the trial judge. Columbia Gulf Transmission Co. v. Fontenot, 187 So.2d 455 (La.App. 3d Cir. 1966); State Through Department of Highways v. Babineaux, supra; State Through Department of Highways v. Circle" Center Corporation, 148 So.2d 411 (La.App. 1st Cir. 1963, Cert. denied). An agreement entered into between the expert witness and one of the parties to the suit as to the fee which the former is to receive for his preparatory work and testimony, or even the actual payment of such a fee to the expert, is no criterion to be used by the court in fixing expert fees. Recreation and Park Commission of East Baton Rouge Parish v. Perkins, 231 La. 869, 93 So.2d 198 (1957).
In the instant suit we find no abuse of discretion on the part of the trial judge in fixing the fees of the two experts who testified in behalf of defendant at $350.00 each.
For the reasons herein assigned the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.