236 So.2d 841 (1970)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
DONNER CORPORATION, Defendant-Appellant.
No. 3063.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1970.
Rehearing Denied July 24, 1970.
*842 Brame, Stewart & Bergstedt, by John R. Stewart, Lake Charles, for defendant-appellant.
Marshall Wroten, William W. Irwin, Jr., and Johnie Branch, Baton Rouge, for plaintiff-appellee.
Before TATE, HOOD and MILLER, JJ.
HOOD, Judge.
This is an expropriation suit filed by the State of Louisiana, through the Department of Highways, against the Donner Corporation. The suit was instituted under LSA-R.S. 48:441-460. Judgment was rendered by the trial court awarding defendant $54.00 as the value of the property taken and $35,485.00 as severance damages, fixing the fees of defendant's two expert witnesses at the total sum of $10,964.50, and taxing these expert witness fees as costs. Defendant appealed, and plaintiff has answered the appeal.
The issues presented are whether the amount awarded to defendant as severance damages should be increased, and whether the amounts allowed by the trial court as expert witness fees should be totally eliminated or, in the alternative, reduced.
Plaintiff, by this proceeding, has expropriated the full ownership of two small tracts of land, comprising a total of only 0.288 acres, owned by defendant. The two strips of land being taken are parts of a very large tract, consisting of 2,759.35 acres, owned by defendant and located in the extreme western part of Calcasieu Parish, Louisiana. This large parent tract is irregular in shape, and a substantial part of it is bounded on the west by the Sabine River.
This suit was instituted on January 25, 1965. At that time, defendant's property was traversed by two highways which ran generally east and west. One of them, known as "New Highway 90," ran through the northern part of the 2,759.35 acre tract. It connected with a bridge which spanned the Sabine River, and it continued westward over that bridge into Texas. New Highway 90, at the time of the taking, was one of the main thoroughfares running through the State of Louisiana.
The other highway which traversed the parent tract was known as "Old Highway 90." It was, and still is, a public highway, and its location as it crosses defendant's property is generally parallel to and about two miles south of New Highway 90. The old highway connected or formed a junction with New Highway 90 at a point two or three miles east of defendant's property. From that junction, Old Highway 90 ran south, and then it curved westward, running through the southern part of defendant's land. It finally terminated on the east bank of the Sabine River at a point about two miles west of the west boundary of defendant's property. At the time of the taking ready access was available from defendant's property to both of these highways.
The two small strips of land being expropriated were taken for the purpose of improving "New Highway 90," and converting it into a segment of Interstate Highway 10. One of these tracts, comprising 0.144 acres, was located on the north side of New Highway 90, immediately adjacent to the east approach of the Sabine River Bridge. The other tract, also comprising 0.144 acres, was located on the south side of that highway, immediately adjacent to the east approach of that bridge. *843 The purpose of the taking was to provide room to construct a "turn around" under the east approach of that bridge. The new Interstate 10 was to be a "no-access" highway, and the turn around was being built to enable a motorist traveling west to go under the east approach of the bridge and then turn to proceed back east on the highway.
When the suit was filed, plaintiff deposited $17,834.00 in the registry of the court as the estimated amount of compensation due defendant for the property expropriated and for severance damages. Of this amount, $22.00 was for the land taken and $17,812.00 was for severance damages. Defendant answered the suit, claiming $1,440.00 as the value of the property expropriated and $506,000.00 as damages to the remainder.
The trial judge awarded defendant $54.00 for the property taken and $35,485.00 as severance damages, subject to credits for the amounts which previously had been deposited in the registry of the court. On this appeal defendant contends that the amount awarded as severance damages should be increased substantially, while plaintiff argues that that portion of the judgment appealed from should be affirmed.
Defendant bases its claim of severance damages primarily on the fact that the conversion of New Highway 90 into a "no-access" interstate highway separates the north part of its property from the south part, and it deprives the parent tract from direct access to and from that highway.
The portion of defendant's property which lies north of New Highway 90 (now Interstate 10) comprises 148.81 acres. This 148.81 acre tract is bounded on the north and west by the Sabine River. It has a frontage of about 8,750 feet on the river, and the south line of said property abuts the Interstate Highway 10 for a distance of a little more than a mile. The part of the parent tract which lies between Interstate 10 and Old Highway 90 consists of 1,642.97 acres, but only a portion of that area is bounded on the west by the river. Defendant's river frontage south of Interstate 10 is not continuous, there being other landowners in the area, but altogether its total water frontage in that area amounts to from 3,000 to 3,500 feet. The area between the two highways also fronts on the south side of Interstate 10 for a distance of a little more than a mile, and it abuts the north side of Old Highway 90 for about the same distance. The remaining part of defendant's land, that being the portion which is south of Old Highway 90 comprises 967.57 acres. This southernmost area has no frontage at all on the river, but it does border on the south side of Old Highway 90 for a distance of more than a mile.
The entire parent tract is primarily marshland, being subject to river overflow and to standing, shallow water. Its average elevation is two and one-half feet above sea level. There is a small area of wooded land in the northeast corner which has a little higher elevation, and there is a strip of land along the north side of Interstate 10, with a depth of about 150 feet, which also has a higher elevation. No part of this property can be used for industrial or commercial purposes, however, unless it first is filled in extensively with dirt. Mr. Garrison Smith, a civil engineer, took elevations of the property owned by defendant abutting Interstate Highway 10, and he testified that it would require an expenditure of about $3,745.00 per acre to raise the level of the property to eight feet above sea level, that being the minimum elevation which would be required to render any part of the property suitable for its best use.
Some large industrial complexes have been developed immediately across the river, on the Texas side. The City of Orange, Texas, is located on the opposite side of the river, a mile or two south of some of defendant's river frontage land, The river is navigable, and it provides access by water from river front industries in *844 that area to the Intercoastal Canal and to the Gulf of Mexico.
Five expert appraisers testified at the trial, three of whom were called by plaintiff and two by defendant. All of them agreed as to the location and dimensions of the property and as to its physical characteristics. All used the market data approach in determining the value of the property before and after the taking, and each listed the other sales which he considered to be comparable and upon which he relied in determining the value of defendant's land. The experts disagreed as to the highest and best use of the property prior to the taking. They also disagreed as to the effect which its low elevation had on the market value, and the effect which the changing of New Highway 90 into a noaccess interstate highway would have on the market value of defendant's remaining property.
M. S. Abelman, one of the appraisers called by defendant, felt that at the time of the taking the highest and best use of the river front property was for industrial purposes, that some parts of the property fronting on the highways were best suited for commercial uses, and that the balance of the property was suitable for use as marsh or grazing lands. He felt that the converting of New Highway 90 into a "no-access" interstate highway completely severed the north 148.81 acres of defendant's land from the part located south of Interstate Highway 10, and that this northern portion, all of which was classified as valuable industrial property, was isolated from access to any highway. He also was of the opinion that the loss of access to New Highway 90 decreased the value of the commercial property abutting that highway. He valued the entire parent tract at $998,600.00 before the taking, and he estimated its value after the conversion of New Highway 90 into a no-access highway at $557,417.00. He concluded that the property taken had a value of $104.00, and that the severance damages amounted to $441,079.00.
Willard J. Hall, the other appraiser called by defendant, classified the parent tract substantially as was done by Abelman. He valued the entire tract at $1,014,227.00 before the taking, and the remainder at $566,987.00 after the conversion of the highway to a no-access thoroughfare. In his opinion the property taken had a value of $105.86, and the severance damages amounted to $447,134.14.
The three appraisers called by plaintiff estimated the value of the property taken and the severance damages at much lower figures. Darryl Willett estimated the value of the 0.288 acres taken at $68.00 and the severance damages at $15,281.00. William B. Coleman valued the two strips of land taken at $54.00 and the severance damages at $35,485.00. And, Arthur Fleming valued the property expropriated at $40.40 and the damages to the remainder at $17,059.00.
The trial court accepted the opinions expressed by expert witness William B. Coleman as to the value of the property taken and as to severance damages. The trial judge said:
"Mr. Coleman's conclusions, supported by the use of comparable sales in the vicinity of the subject property and his method of dividing up and valuing the subject property are, in the Court's opinion, based on logical ground and sound reasoning. The Court is in complete agreement with all of his testimony as to the damages for the property taken and the severance damages."
Coleman felt that the water front influence on the 2,759.35 acre parent tract extended one-half mile back from deep water, and he considered that portion of the land to be potential industrial property. He was of the opinion, however, that none of the parent tract was ready for development at the time of the taking, and that its highest and best use at that time was for "speculative acquisition for long-term investment." He did not regard the north 148.81 acre tract as being completely severed *845 from the remainder of the property, because there was access from one portion to the other under the east approach of the bridge, the access being over the land which lies between the east bank of the river and the newly constructed turn around. Considering the cost of filling the land, and the fact that the property was not ready for development, Coleman valued the entire parent tract at $175,378.00 before the taking, and at $139,839.00 after the conversion of New Highway 90 to a no-access road. As we have already noted, he concluded that the value of the property taken was $54.00 and that the severance damages amounted to $35,485.00.
The other experts called by plaintiff agreed substantially with Coleman as to the highest and best use of the property, although they arrived at different conclusions as to values and damages.
The evidence shows that there was access from the north 148.81 acre tract to the part of defendant's land south of Interstate Highway 10, the access being under the east approach of the bridge. Access from one tract to the other by that means is not as convenient as it was before the taking, and we realize that the construction of a private road will be needed if the property is to be used for industrial purposes. We believe, however, that the appraisers for plaintiff took those facts into account when they determined the value of the property taken and the severance damages.
Much discretion is granted to the trial judge in evaluating and weighing the evidence given by expert witnesses, and his findings of fact based on their testimony will not be disturbed unless found to be clearly erroneous. Parish of East Baton Rouge v. S. & H. Heating Company, 216 So.2d 360 (La.App. 1 Cir. 1968).
In the instant suit we cannot say that the trial judge erred in accepting the testimony of Mr. Coleman, in preference to that of the other expert witnesses, as to the value of the property taken and as to severance damages. We thus affirm that portion of the judgment which awards defendant $54.00 for the property taken and $35,485.00 as severance damages.
The trial judge fixed the fee of Mr. Abelman, one of the expert appraisers called by defendant, at the sum of $4,755.00, and the fee of defendant's other expert witness, Mr. Hall, at $6,209.50. These fees were taxed as costs, and plaintiff was condemned to pay all costs. On this appeal, plaintiff takes the position that the fees allowed these two witnesses should be eliminated completely because their testimony was rejected. Alternatively, plaintiff contends that the amount allowed in each instance is grossly excessive and should be reduced.
A witness who is qualified and who testifies as an expert in a trial is entitled to additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required. Such an expert witness is entitled to reasonable compensation for his appearance in court and for the preparatory work done by him, but the fees allowed him must be reasonable and somewhat in line with the fees heretofore allowed in other similar cases. LSA-R.S. 13:3666; State, through Department of Highways v. Babineaux, 189 So.2d 450 (La.App. 3rd Cir. 1966); State, through Department of Highways v. Salemi, 249 La. 1078, 193 So.2d 252 (1967); State, Department of Highways v. Black, 207 So.2d 583 (La.App. 3rd Cir. 1968).
An agreement entered into between an expert witness and one of the parties to the suit as to the fee which the former is to receive for his preparatory work and testimony, or even the actual payment of such a fee to the expert, is no criterion to be used by the court in fixing expert fees. Recreation and Park Commission of East Baton Rouge Parish v. Perkins, 231 La. 869, 93 So.2d 198 (1957); State, Department of Highways v. Black, supra.
*846 Witness fees of expert appraisers were fixed at $700.00 each in Orleans Parish School Board v. Bond, 200 So.2d 411 (La. App. 4 Cir. 1967), where an award was made to the defendant landowners of $23,200.00.
In State v. Babineaux, supra, where an award of $11,920.00 was made to the landowner, an expert appraiser who testified was allowed a fee of $350.00 for his preparatory work and $100.00 for testifying in court.
An award of $50,000.00 was made to the defendant landowner in State, through Department of Highways v. Colomb, 225 So. 2d 280 (La.App. 4 Cir. 1969). The expert witness fees were fixed at $500.00 each for preparatory work and $100.00 for testifying at the trial. The reviewing court refused to increase the amount of those fees.
In State, Department of Highways v. Black, supra, the trial court awarded the defendant landowner $53,388.00 for the property taken, and he fixed the expert witness fees at $250.00 each for preparing for trial and the additional sum of $100.00 for testifying. On appeal the defendant sought to have the expert witness fees increased. We refused on the ground that the fee allowed was reasonable and that there had been no abuse of discretion on the part of the trial court.
In the instant suit, Mr. Abelman submitted a statement in the amount of $4,985.00 for his preparatory work and expenses. The principal item shown on that statement is "24 days $200.00 per day: $4,800.00." In his testimony, Mr. Abelman stated that he "started keeping" a record of the days and hours he worked on the case, but that he "forgot to keep it up and I had to estimate the balance of it." The trial judge allowed Abelman $175.00 per day for the number of days claimed by him, and rejected some other minor expense items shown in his statement. He added $450.00 for testifying in court, however, making a total fee of $4,755.00 allowed to that witness.
Mr. Hall submitted a statement in the amount of $5,909.50 for his preparatory work. The principal item shown there is "38 man days @ $150.00 per day," amounting to $5,700.00. He testified that he kept written records of the number of hours or days he spent in preparing for the trial. The trial judge allowed him the full amount claimed in that statement, plus $300.00 for testifying at the trial.
We find no merit to plaintiff's contention that the expert witness fees should be eliminated completely. We are convinced, however, that the amounts fixed by the trial court as expert witness fees in the instant suit are unreasonably excessive, and that they are out of line with allowances made in other similar cases. We think the trial court in fixing expert witness fees should consider the value of the property or severance damages involved, as well as the amounts allowed in other cases as witness fees. Here the expert witness fees allowed for two out of the five expert witnesses who testified amount to almost one-third of the total amount involved in this suit. We agree that the defendant landowner should be compensated for the expenses which he reasonably must incur in obtaining expert testimony for trial, but he is not entitled to compel plaintiff to pay an unreasonable amount.
The evidence in the instant suit shows that the appraisers engaged by defendant had to devote much more time and effort, and had to incur more expenses in preparing for trial than is ordinarily required. This was due primarily to the large size and unusual nature of the parent tract. Both of them had maps and plats prepared. Abelman rented a boat to view the area by water, and Hall engaged a plane to view it by air. The record shows that the trial lasted three days, and we assume that it was necessary for both of these expert witnesses to attend the trial during each of those days. In view of *847 these unusual circumstances, we have decided that an expert witness fee of $2,250.00 should be allowed to each of these expert witnesses, Abelman and Hall, as compensation for their time and expense in preparing for trial, and for testifying at the trial. These fees will be taxed as costs.
For the reasons herein assigned, the judgment appealed from is amended by reducing the amount allowed as expert witness fees for Willard J. Hall from $6,209.50 to the sum of $2,250.00; and by reducing the amount allowed as expert witness fees for M. S. Abelman from $4,755.00 to the sum of $2,250.00. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.