292 So.2d 842 (1974)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
BEAIRD-POULAN, INC., Defendant-Appellant.
No. 12265.
Court of Appeal of Louisiana, Second Circuit.
March 19, 1974.
Rehearing Denied April 23, 1974.
Writ Granted June 7, 1974.
*843 Hargrove, Guyton, Ramey & Barlow by Thomas J. Wyatt, Shreveport, for defendant-appellant.
D. Ross Banister, Jesse S. Moore, Jr., William W. Irwin, Jr., Alva J. Jones, and Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellee.
Before AYRES, BOLIN, and WILLIAMS, JJ.
AYRES, Judge.
This is an expropriation proceeding. The taking was occasioned by and for the purpose of the contemplated construction of Interstate 220, a bypass to the north of Interstate 20 through the City of Shreveport. The property affected, owned by defendant, is a tract approximately 250 feet wide and extends westerly from the Greenwood Road (U. S. Highway 80), a distance exceeding a half mile. The right of way taken, 500 feet wide, running in a northeasterly-southwesterly course, crosses defendant's property near its center and comprises 3.172 acres. The remainder is severed into two tracts almost equal in area. The tract fronting on Greenwood Road, known as the east tract, comprises 6.858 acres; the tract west of the bypass route, 6.5 acres. All improvements on the property defendant's offices, warehouses, machinery and facilities for the manufacturing and assembling of chain saws, as well as parking areasare located on the east tract. Sufficient area remains on this tract to double the parking space or to serve for some other expansion. The west tract and the right of way taken for the bypass were vacant, undeveloped, and barren of any improvements.
After trial, the court concluded the property taken and the area included in the west tract had a value of $7,000 per acre; that the west tract sustained severance damages to the extent of 40% of its evaluation; and that neither the east tract nor the improvements thereon sustained severance damages. Accordingly, defendant was awarded judgment in the sum of $40,404, which amount represented the value of the right of way taken in the sum of $22,204 and severance damages to the west tract comprising $18,200. Consequently, defendant was awarded judgment in the aforesaid principal sum, subject to a credit of $34,650 as of the date of the taking, May 3, 1971, with interest at the rate of 7% per annum from that date until paid. From the judgment, defendant appeals.
*844 The defendant assigns as error the action of the trial court (1) in fixing the value of the land alone at $7,000 per acre rather than $7,500 per acre; (2) in refusing to award severance damages for the remaining east tract; (3) in fixing the just compensation for the land taken and the severance damages sustained by the remainder as a result of the taking at $40,404 rather than $153,000; and (4) in fixing the expert-witness fees for defendant's expert witnesses: O. L. Jordan, at $750 rather than $2,050, and Jack Wells Clarke, at $100 rather than $200. These assignments of error encompass only factual matters.
Roy J. Fulco, an appraiser and expert for the Department of Highways, found the highest and best use of defendant's property to be industrial, though the rear portion was not zoned as such. Defendant's experts were in accord with this conclusion. Using three sales of property zoned as either industrial or having industrialization as their highest and best use, two locations outside the city and one within, Fulco appraised the subject property at $6,000 per acre. Defendant's witness Jordan, also using three sales of property as a basis for his appraisal, two of which were those used by Fulco, estimated the value of defendant's land at $7,500 per acre. The court concluded the property had a market value of $7,000 per acre. We find no error in this conclusion.
Nor do we find any basis for any substantial complaint in the award of severance damages to the west, or rear, tract of the remaining property. Such damages were determined on a basis of a 40% depreciation in the value of the property by reason of the interstate bypass. Defendant's complaint concerned the evaluation upon which the percentage of depreciation was calculated. As already noted, we find no manifest error in the evaluation of the property.
Nor do we find any cause or justification for disagreement with the trial court in its findings that the east tract sustained no severance damages by virtue of the aforesaid taking. As heretofore noted, all of defendant's improvementsits offices, warehouses, machinery and assembly departmentswere located on this east tract, with adequate parking spaces for its officers, employees, and customers, and room for expansion of its facilities or the doubling of its parking area. The improvements remained intact as well as the realty upon which they were situated. Access to this tract from the Greenwood Road, upon which it fronted, remained, likewise, intact. Fulco testified, and his report so showed, that this portion of defendant's property did not sustain severance damage. Jordan's estimation of damages to the tract or to the improvements thereon was not predicated on or supported by any facts or circumstances. Under cross-examination, he conceded this fact and so testified.
In giving their opinions, experts should state the facts upon which their opinions are based; the value of an opinion of an expert witness is therefore dependent on the existence of facts upon which it is predicated. Chandler v. Barrett, 21 La.Ann. 58 (1869). Otherwise no material weight or credit may be given such testimony. Interdiction of Escat, 206 La. 207, 19 So.2d 96 (1944); Chandler v. Barrett, supra; Carrier v. Aetna Casualty & Surety Co., 186 So.2d 445, 449 (La.App., 1st Cir. 1966). And it has been held that expert opinions are worthless without proper foundation and facts to support them. Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654, 657 (1941); State v. Gras, 131 So.2d 628, 635 (La.App., 2d Cir., 1961); Williams v. Bituminous Casualty Corporation, 131 So.2d 844, 849 (La. App., 2d Cir., 1961).
The burden is placed upon the landowner to establish that the land expropriated had a greater value than the amount deposited in the registry of the court; his burden extends likewise to the *845 establishment of severance damages. LSA-R.S. 48:453; State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972); State, Department of Highways v. Lancon, 174 So.2d 257 (La. App., 3d Cir., 1965); Louisiana Highway Commission v. Grey, supra; Williams v. Bituminous Casualty Corporation, supra. By burden of proof is meant the production of adequate proof by a preponderance of competent and convincing evidence.
Much discretion is granted to the trial judge in evaluating and weighing the evidence given by expert witnesses, and his findings of fact, based on their testimony, will not be disturbed unless found to be clearly erroneous. State v. Ragusa, 234 La. 51, 99 So.2d 20 (1958); State, Department of Highways v. Christ Baptist Church, 197 So.2d 83 (La.App., 1st Cir., 1967); Parish of East Baton Rouge v. S & H Heating Company, 216 So.2d 360 (La.App., 1st Cir., 1968).
Only two experts, one for the plaintiff and the other for the defendant, testified with reference to the value of the property taken and the severance damages sustained to the remainder. Where such a difference in testimony exists, as in this case, the conclusion is inescapable that defendant has not borne its burden of proof. In this regard, it may be pointed out that Clarke, an expert produced by defendant, did not appraise the property, nor did he attempt to testify as to its value or as to any severance damages it might have sustained. His testimony related to the desirability of adequate space for expansion of facilities by industrial concerns. In this regard, a landowner's plans and hopes for the future are completely irrelevant and, more often, more illusory than real. Parish of Iberia v. Cook, 238 La. 697, 116 So. 2d 491, 496 (1959). Moreover, alleged value of property based on speculation, conjecture, mere possibility, and even unsupported probability, is not sufficient to support a judgment. State v. Levy, 242 La. 259, 136 So.2d 35 (1961); Roberts v. M. S. Carroll Co., 68 So.2d 689, 693 (La.App., 2d Cir., 1953). This principle of law appears to be particularly applicable in the instant case to the testimony of defendant's witness, who was unable to substantiate his opinion with a statement of facts upon which such an opinion should be based.
With respect to the question which has arisen concerning defendant's expertwitness fees, it was appropriately stated in State v. Donner Corporation, 236 So.2d 841, 845 (La.App., 3rd Cir., 1970):
"A witness who is qualified and who testifies as an expert in a trial is entitled to additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required. Such an expert witness is entitled to reasonable compensation for his appearance in court and for the preparatory work done by him, but the fees allowed him must be reasonable and somewhat in line with the fees heretofore allowed in other similar cases. LSA-R.S. 13:3666; State, through Department of Highways v. Babineaux, 189 So.2d 450 (La.App. 3rd Cir. 1966); State, through Department of Highways v. Salemi, 249 La. 1078, 193 So.2d 252 (1967); State, Department of Highways v. Black, 207 So.2d 583 (La. App. 3rd Cir. 1968).

"An agreement entered into between an expert witness and one of the parties to the suit as to the fee which the former is to receive for his preparatory work and testimony, or even the actual payment of such a fee to the expert, is no criterion to be used by the court in fixing expert fees. Recreation and Park Commission of East Baton Rouge Parish v. Perkins, 231 La. 869, 93 So.2d 198 (1957); State, Department of Highways v. Black, supra." (Emphasis supplied.)
We find no abuse in the discretion of the trial court in his determination of the expert-witness fees to be taxed as cost in this proceeding.
*846 The Department of Highways, plaintiff-appellee, in an answer to the appeal, complains that the judgment appealed awards defendant-appellant 7% interest on the excess award from May 3, 1971, until paid, and contends that the Department of Highways is liable for payment of interest at the rate of only 5% in expropriation cases filed under LSA-R.S. 48:441 et seq., sometimes referred to as the "Quick-Taking Statute."
Section 455 of the aforesaid statute, the statute under which the property in this case was expropriated, contains provisions quite specific and limited in scope with reference to the rate of interest. This section of the statute provides:
"The judgment rendered therein shall include, as part of the just compensation awarded, interest at the rate of five per centum per annum on the amount finally awarded as of the date title vests in the plaintiff to the date of payment; but interest shall not be allowed on so much thereof as has been deposited in the registry of the court." (Emphasis supplied.)
By Act 315 of 1970, LSA-C.C. Arts. 1938 and 2924 were amended to increase the rate of legal interest from 5% to 7% per annum. That act, however, made no reference whatsoever to Section 455 of the "Quick-Taking Statute" quoted hereinabove. The "Quick-Taking Statute" (LSA-R.S. 48:441-48:460) is a special statute, and Section 455 thereof is quite specific: (1) it applies to a very limited class of obligations; namely, the amount of excess awarded in highway "quick-taking" expropriations; (2) it states specifically the time from which interest shall be computed, that is, the date when title of the expropriated property vested in the expropriating authority until the date of payment; and (3) it specifically provides that in these cases the interest rate shall be 5% per annum.
One of the firmly established principles of our law is the concept that special laws prevail over a general law. The Legislature, having enacted a special statute such as the aforesaid "Quick-Taking Statute," is not to be presumed to have intended its amendment or change by a subsequent enactment of a general statute. State v. Rapides Parish School Board, 158 La. 251, 103 So. 757 (1925); Hayes v. Morgan's Louisiana & T. R. & S. S. Co., 117 La. 593, 42 So. 150 (1906); Cumberland Tel. & Tel. Co. v. Morgan's La. & T. R. & S. S. Co., 112 La. 287, 36 So. 352, 353 (1904).
In the Cumberland case, supra, the Louisiana Supreme Court appropriately observed:
"But it has never been held or even contended that the jury act of 1877 repealed or amended section 1481 of the Revised Statutes of 1870 relative to jurors in expropriation suits.
"In 1890 the Legislature recognized that section as an existing law by providing for trials in vacation under its provisions. See Act No. 132, p. 174, of 1890.
"Since 1855 we have had special statutes relative to the trial of expropriation suits, and general statutes relative to the trial by jury of civil and criminal cases. There is no conflict between such statutes. The most that can be said is that they contain different provisions for different cases. The lawmakers, having enacted a special statute for a particular case, will not be presumed to intend its repeal or amendment by the subsequent enactment of a general statute on the same subject-matter. Both may stand, though their provisions may be different. This question was fully and ably discussed in Welch v. Gossens, 51 La.Ann. 852, 25 South. 472." (Emphasis supplied.)
We are aware of but most respectfully disagree with the pronouncement of our brethern of the Third Circuit in State, Department of Highways v. Mertens, 271 So. *847 2d 280, 283-284 (La.App., 1972), wherein it was held that the increase in the legal rate of interest to 7% per annum was applicable to expropriation proceedings rather than the statutory rate specially and particularly prescribed by the special statute dealing with that special and particular subject.
In the opinion cited, it was stated:

"Although it is true, as the Department contends, the general rule is that in case of conflict a special statute prevails over a general statute. Nevertheless, it is equally well settled that if the intent of the legislature in the last statute is to cover the whole subject matter dealt with and to modify or supersede all previous laws in conflict, the subsequent general statute prevails, State v. Henderson, 120 La. 535, 45 So. 430 (1907); Johnson v. Sewerage District #2 of Parish of Caddo, 239 La. 840, 120 So.2d 262 (1960); Giles v. Breaux, 160 So.2d 608 (La.App., 1st Cir. 1964); and Pelloat v. Greater New Orleans Expressway Commission, 175 So.2d 656 (La.App., 1st Cir. 1965). In the present case it is apparent that the intent of the legislature in Act 315 of 1970 was to change the rate of legal interest provided in all prior statutes from 5% to 7% per annum. Hence, the judgment appeal must be amended to conform to the 1970 statute." (Emphasis supplied.)
That court, however, recognized, as noted in the above quotation, the principle that a special statute prevails over a general statute. There is nothing in the statute (Act 315 of 1970), as we read and understand it, from which it could be presumed or was apparent the Legislature intended that the special statutory rate of interest prescribed in the "Quick-Taking Statute" was amended, or intended to be amended, by the general statute concerning only legal interest. That the special statutory rate of interest prescribed for expropriation proceedings was the same as legal interest was apparently coincidental. It was a special rate for the purposes contemplated by the statute, and, so far as the rule is concerned, may have as well been fixed at 4%, 8%, or any other rate at the discretion of the Legislature. Had the Legislature intended to amend Section 455 of the aforesaid statute, it could have easily and specifically done so. It appears the best evidence of the legislative intent is the fact that it did not amend Section 455.
However, in view of the language of Act 315 of 1970, amending LSA-C.C. Articles 1938 and 2924, in not providing for a specific repeal or amendment of the rate prescribed in the expropriation statute to have the effect contended by defendant, we would of necessity have to hold that Section 455 of the quick-taking-expropriation statute was amended or repealed by implication. Such amendments or repeals are not favored in law; and, moreover, the Legislature, having enacted by special statute, cannot be presumed to intend its amendment by a subsequent enactment of a general statute on the same subject matter. State v. Rapides Parish School Board, supra.
Nor are we unmindful that an application for writs to the Supreme Court in State, Department of Highways v. Wahlder, 271 So.2d 284 (La.App. 3d Cir., 1972), a companion case to that of State, Department of Highways v. Mertens, supra, was refused. From that fact, it cannot be supposed that the denial of writs was such a pronouncement as would bar a consideration of the questions presented in the instant case.
Pertinent here are recent expressions of the Supreme Court. In Garlington v. Kingsley, 289 So.2d 88, 91-92 (La., 1974), Associate Justice Barham, for the court, pointed out:
"The refusal of writs by this Court, which is usually based upon incomplete records and ex parte applications and without hearing, is not decisional law. This Court's action upon writs may be indicative of a predisposition on a certain *848 legal issue but is not necessarily determinative of that issue. This Court is not bound by its refusal of writs to adopt law expressed in appellate court opinions, although it may well adopt such a case holding as law when, upon a full hearing, it is found that the holding is supported by positive law or, in the absence of positive law, by reason and logic or natural law."
A pronouncement to the same effect is contained in Colonial Pipeline Company v. Agerton, 289 So.2d 93, 96 (La., 1974), wherein Associate Justice Calogero, for the court, used this language:
"This Court's refusal in 1969 to grant writs upon application by the State in that earlier case, while normally persuasive, does not carry the same weight as a precedent as it would, had that case been decided by this Court after the granting of a writ. See State v. Theard, 212 La. 1022, 34 So.2d 248 (1948); State v. Ardoin, 197 La. 877, 2 So.2d 633 (1941). This Court is not bound by its refusal of writs, to adopt law expressed in appellate court opinions. Garlington v. Kingsley, handed down this day. 289 So. 2d 88 (La.1973 [sic])."
In following the aforesaid principles, this court, in Edwards v. S. & R. Gas Co., 73 So.2d 590 (1954), corrected what it deemed to be an error which it had theretofore made in Holicer Gas Co. v. Wilson, 45 So.2d 96 (1950), notwithstanding that writs had been denied by the Supreme Court in the Holicer case. It may be also noted that writs were subsequently denied in the Edwards case. Thus, with respect to the denial of certiorari in the first case, such ruling does not reflect such a prior adjudication on the merits of the issues as would preclude a consideration and a determination of the questions presented on a subsequent review.
Thus, we conclude that Act 315 of 1970, increasing the rate or percentage of legal interest from 5% to 7% per annum, did not effect a repeal or an amendment of LSA-R.S. 48:455 so as to result in a change in the special statutory interest rate in expropriation cases.
Thus, for the reasons assigned, the judgment appealed is amended to reduce the rate of interest therein prescribed from 7% per annum to 5% per annum; and, as thus amended, it is affirmed at defendant-appellant's costs.
Amended and affirmed.