186 So.2d 445 (1966)
John R. CARRIER
v.
AETNA CASUALTY & SURETY CO. et al.
No. 6655.
Court of Appeal of Louisiana, First Circuit.
May 9, 1966.
*446 Frank M. Edwards, Jr., of Edwards & Lagarde, Amite, for appellant.
Iddo Pittman, Jr., of Pittman & Matheny, Hammond, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
Plaintiff, John R. Carrier, has taken this appeal from the judgment of the trial court rejecting his demand for permanent disability benefits under our compensation law against his former employer, Irvin Fogleman and Fogleman's insurer, Aetna Casualty & Surety Company.
Appellant, an employee in a dairy formerly operated by Fogleman, maintains he was injured in the course of said employment on July 26, 1963, while in the act of descending a ladder. It is shown that plaintiff's duties included, inter alia, tending milking machines, feeding cattle and cleaning the bulk milk tank. It also appears plaintiff was provided with a helper over whom he had supervision and whose duty it was to assist plaintiff in the operation of their mutual employer's business. Plaintiff alleges his injury occurred as he was descending the ladder after having checked the feed hopper in the loft above the milking room which device was employed to feed the cows during the milking process. More precisely, appellant contends the ladder slipped along the edge of the roof against which it was placed, causing plaintiff to fall across a nearby gate injuring plaintiff's eleventh or twelfth thoracic vertebra thusly producing the injury for which compensation is claimed.
Defendants maintain there was in fact no accident as alleged by petitioner and moreover that it was impossible for the accident to have occurred in the manner related by appellant. Alternatively appellees assert plaintiff is not disabled and in the further alternative contend appellant's disability, if any, is not attributable to the alleged accident.
As stated by our learned brother below, the present matter presents two issues, namely, whether there was in fact an accident and, if so, did plaintiff suffer the injuries complained of as a result thereof? The written reasons for judgment filed by our esteemed colleague of the lower court clearly indicate he entertained considerable doubt concerning the occurrence of the alleged accident. However, notwithstanding his skepticism, our able brother of the trial *447 court nevertheless resolved the question of the accident in favor of plaintiff predicated upon certain corroborating testimony of plaintiff's assistant and co-worker who was allowed to be called by plaintiff on cross-examination. The second issue was adjudicated in favor of defendants and plaintiff's suit was dismissed. Learned counsel for appellant contends the trial court erred in holding there was no conflict in the medical testimony, in refusing to consider lay evidence of disability and in determining plaintiff had failed to establish disability causally related to his employment by defendant, Fogleman.
For reasons which will hereinafter become obvious, we pretermit all consideration of the occurrence of the alleged accident and dispose of the instant appeal upon the issue of disability alone.
A fair summary of appellant's testimony is to the effect that the alleged accident occurred between 4:30 and 5:00 A. M. on the morning of July 26, 1963. Following the accident plaintiff continued his usual duties and when his aforesaid employer arrived upon the scene later that morning, plaintiff told him of the accident but did not report that he, plaintiff, was injured as a result thereof. Appellant made no complaint of pain and reported no inability to work until September 7, 1963, on which date he advised his employer he was leaving because he was no longer able to do the work. From the date of his alleged injury until November 28, 1963, plaintiff sought no treatment and took no medication because he felt his condition would improve. Four months following the accident plaintiff consulted a physician for the first time. Plaintiff's initial medical record consists of an "Emergency Memo" from Lallie Kemp Charity Hospital, Independence, Louisiana, dated November 28, 1963, which shows plaintiff was examined at 7:35 P. M. on said date when X-rays were taken. An unsigned note on the report states the following:
"John Carrier w/m 55
Thoracic spine: There is anterior wedging of one of the lower thoracic vertebrae which I believe is either T-11 or T-12. A small fracture line runs through its mid portion. No other abnormality.
Dr. Albright h"
The aforesaid emergency memo reveals plaintiff's complaint upon admission was "Pain in back since yesterday since 600 lb. load slipped & pulled back." Plaintiff maintains the noted adverse entry on his aforesaid medical record results from a misunderstanding in that the examining physician, apparently a foreigner with a strange accent, misconstrued plaintiff's explanation that plaintiff felt as though a 600 pound load had fallen on him.
Five and one-half months later, on May 7, 1964, plaintiff again reported to the Lallie Kemp Charity Hospital at 6:00 P. M. from which institution he was transferred to Charity Hospital of Louisiana in New Orleans, which latter facility treated him as an out patient because of the lack of adequate orthopedic service at the former. The records of the New Orleans hospital disclose plaintiff was seen in the Admit Room on May 14, 1964, and in the out patient clinic on May 28, 1964. X-rays taken at the New Orleans hospital were introduced in evidence. The envelope containing the pictures in question bear the inscription "Osteoporosis with compression of T-12." followed by initials. No medical authority from either of said hospitals was called to either testify in plaintiff's behalf, explain the alleged "misunderstanding" or interpret the X-rays taken.
Plaintiff was next seen by a physician on August 4, 1964, on which occasion he was examined by Dr. Irving Redler, orthopedic surgeon, at defendants' request. A thorough medical examination conducted by Dr. Redler proved totally negative. Based upon his examination of the X-rays taken at the Lallie Kemp Hospital, as well as pictures taken under his own direction together with his personal observation of appellant, Dr. Redler testified that the wedge shaped deformity of the twelfth thoracic vertebra *448 was not the result of a fracture. He considered the noted defect resulted from a longstanding pre-existing condition known as epiphysitis and deemed it of no clinical significance. Dr. Redler was of the opinion appellant was not disabled and his examination disclosed no abnormality that should cause pain.
On March 12, 1965, seven months following his examination by Dr. Redler, plaintiff was referred by his counsel to Dr. Oliver Duane Forman, neuro-surgeon, who conducted a physical examination of plaintiff and viewed X-rays previously made. Dr. Forman was of the opinion the X-rays showed a compression change in the body of the twelfth thoracic vertebra but, having no X-rays antedating the accident to use for comparative purposes, he could not be certain the changes noted resulted from the avowed injury. He expressed the opinion it was more likely that the compression change shown was developmental. Dr. Forman was reluctant to disagree with the above quoted hospital record regarding the presence of a fracture line through the body of the vertebra. He was of the further opinion the existence of such a fracture line would have no clinical significance inasmuch as it would not account for plaintiff's persistent symptoms, if plaintiff did in fact experience the pain he related. Dr. Forman also observed that plaintiff claimed a diminished sensation from the twelfth thoracic nerve root extending down over the trunk to the buttock and left lower extremity, accompanied by a loss of sensation in the lower abdomen. He stated that while plaintiff displayed no objectively abnormal physical findings, the pattern of his sensory loss was so distinctly compatible with nerve root distribution that it amounted to an objectively abnormal finding. Predicated upon his own observations and the history related by appellant, Dr. Forman "thought the most likely diagnosis was a sprain of the spine at the dorsomuscular junction with probable intervertebral disc injury and a persistent mechanical disorder secondary to this." Dr. Forman was of the opinion plaintiff was disabled to do heavy physical work and that this condition would probably be permanent.
Dr. Timothy Haley, radiologist, examined all available X-rays taken of appellant and testified that the only abnormalities revealed thereby were narrowing of all thoracic intervertebral bodies due to osteochondritis, an old epiphysitis or Scheuermann's disease, which is a disease of youth unrelated to any trauma or accident which plaintiff might have experienced since 1960. According to Dr. Haley, the X-rays also disclosed calcification in the thoracic spine several inches above T-11 and T-12 probably unrelated to injury but if of traumatic origin was the result of trauma occurring "years and years and years" previously and not since 1960. He regarded the narrowing or wedging of the twelfth thoracic vertebra as a congenital anatomical variant or result of the old Scheuermann's disease of which he found evidence as hereinabove previously noted. In addition Dr. Haley was in disagreement with the notations shown on the hospital reports. He was not convinced the reports showed a diagnosis had actually been made at the hospital in New Orleans and further stated that if such reports showed a diagnosis of fracture of T-11 and T-12, he was in disagreement therewith.
All of the medical testimony is in agreement to the effect that had plaintiff sustained a fracture on the date of the alleged accident, apparent changes in the vertebra would have occurred during the interval following the initial X-rays. No such changes were observed by any medical export who testified at the trial below. The preponderance of expert testimony impels the conclusion the line of increased density shown on all the X-rays introduced in evidence does not indicate a fracture, but rather an unimportant condition occasionally observed consisting of the remains of the growth of a nutrient artery.
Learned counsel for appellant makes the point that Dr. Redler's testimony should *449 be disregarded because it is in disagreement with the opinions of at least three physicians in the two public hospitals in which plaintiff was a patient. It is of the utmost significance, however, that the physicians from these institutions were not called to testify. Counsel for appellant also cites Harris v. Great American Indemnity Company, La.App., 142 So.2d 594, in support of the well established rule that the opinions of treating physicians are entitled to greater weight than that of physicians who have not examined the patient or who have examined the patient for evaluation only. We readily concede this to be a fair and correct statement of applicable law but, in the instant case, of the experts testifying two examined plaintiff only once for forensic purposes while the third testified only from examination of X-rays. In the case at bar it is of the greatest importance that the treating physicians, if any, did not testify. The hospital records introduced in evidence, show that plaintiff was prescribed analgesic pills at Lallie Kemp Hospital and a corset was prescribed for his use at the New Orleans facility. It further appears appellant saw fit not to use the surgical corset recommended.
The cryptic and anonymous notations on the hospital records appearing in evidence have little evidentiary value unless explained by those who authored and compiled them. It is settled jurisprudence that the opinions of medical experts must be explained and the facts upon which they are predicated must be stated before material weight or credence may be attributed thereto. Chandler v. Barrett, 21 La.Ann. 58; Interdiction of Escat, 206 La. 207, 19 So.2d 96. Opposing counsel has the right to cross-examine medical witnesses regarding the basis of their opinions. Clanton v. Shattuck, 211 La. 750, 30 So.2d 823.
Our review of the medical testimony of record herein reveals no substantial difference of opinion and no conflict whatsoever with respect to the cause of plaintiff's complaints. The only expert testimony which could conceivably connect plaintiff's protestations of pain to the alleged accident is that of Dr. Forman who examined plaintiff on only one occasion, found no objective symptoms and made a diagnosis of spinal sprain based principally on the history and complaints related by appellant one year and eight months following the reputed occurrence.
In summation the evidence shows that plaintiff, whose injury caused pain which progressed to such extent he was compelled to resign his employment six weeks later, nevertheless neither sought nor received medical attention until four months subsequent to his injury. He was seen by physicians twice in Independence, Louisiana, at Lallie Kemp Charity Hospital and twice at the Charity Hospital in New Orleans. More than one year following the accident he was examined by defendant's specialist and seven months subsequently by his own expert. This, in short, is the totality of medical testimony upon which appellant bases his claim to disability and a causal relation thereof to his employment by defendant. Plaintiff did not produce the testimony of the experts who were probably best qualified to assist the court in resolving the factual issues involved herein, namely, the physicians at the two public institutions in which plaintiff received treatment. While it may be that these experts were not available to testify, the record does not so show.
In a workmen's compensation case, as in other civil actions, the burden rests upon the plaintiff to establish his claim with legal certainty, and speculation, conjecture, possibility or unsupported probability will not suffice. Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1; Anderson v. Southern Fabricators Corp., La.App., 160 So.2d 438; Hebert v. Your Food Processing & Warehouse Co., La.App., 170 So.2d 765. Plaintiff must produce medical evidence to establish a causal connection between his alleged ailments and his employment. Oestriecher v. Mutual Life Insurance Co. of N. Y., La. *450 App., 167 So.2d 461 (writ refused 246 La. 910, 168 So.2d 821.)
For the reasons hereinabove set forth, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.