SAMUEL, Judge.
This suit for maximum workmen’s compensation benefits was brought by a private police guard who claims he suffered a totally and permanently disabling back injury during the course and scope of his employment. The petition alleges that between 8 and 9 p. m. on June 2, 1964, while guarding a cargo of whiskey on the Galvez Street wharf in the City of New Orleans, plaintiff tripped over a pallet and fell ten feet to the concrete flooring with several whiskey cases falling on top of him. He also claims he is entitled to statutory penalties and attorney’s fees because his employer’s insurer paid him compensation for approximately five months and then discontinued benefits, allegedly arbitrarily, despite the fact he was still disabled. The sole defendant, the workmen’s compensation insurer of plaintiff’s employer, answered with a general denial.
After trial there was judgment awarding plaintiff $35 per week for a period of 400 weeks, subject to a credit for benefits previously paid, plus a medical expert witness fee of $100. Defendant has appealed. Plaintiff has answered the appeal reurging his claim for penalties and attorney’s fees and seeking an increase in the expert fee from $100 to $200.
Relying on such cases as Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1; Carrier v. Aetna Casualty & Surety Co., La.App., 186 So.2d 445; and Anderson v. Southern Fabricators Corporation, La.App., 160 So.2d 438, which hold that the plaintiff in a compensation suit, like other plaintiffs, is required to establish all essential elements of his claim, including a causal connection between the injury and the disability, by a preponderance of the evidence, defendant contends plaintiff has failed to prove: (1) he was injured while on the job; (2) a causal connection between his alleged injury and his resultant disability; and (3) actual disability under the law.
Plaintiff was the only witness to the accident. He testified on June 2, 1964 he was either sitting or standing on cases of whiskey he was assigned to guard on the Galvez Street wharf when the stack fell over. He fell approximately ten feet and several full cases and a pallet board fell on top of him. Because he had been alerted to a plan to steal some of the cargo, he said he did not leave the area until his relief arrived at about 11 p. m. Then, because he felt unable to drive his own automobile, he called a cab to take him home. Saia further testified he telephoned his employer the next day because he was unable to report for work and at that time gave the employer information about the accident; he was told to come into the office and make out a written report on the incident as soon as he was able.
According to plaintiff he filed the report with his employer on June 4, 1964 and was immediately sent to Browne-Mc-Hardy Clinic for treatment. Defendant’s records indicate plaintiff was first treated on June 10, 1964. There is no doubt he had been injured. This was conceded by Dr. Ralph McDonough of the Browne-McHardy Clinic.
Defendant urges plaintiff’s testimony also is riddled with other inconsistencies. While plaintiff says he was first treated on June 4, 1964, the day he filled out a formal report of the accident, defendant’s records show the accident was formally reported on June 9, 1964. Plaintiff did sign a written statement reciting the accident was reported to his employer’s office on June 9, 1964, and further stating the accident occurred on June 3, 1964, one day later than plaintiff said it occurred when he testified.
*175 In addition, defendant cites minor discrepancies in plaintiff’s accounts of the accident. In his petition he stated he tripped over a pallet and his testimony was that he fell from the stack while either standing or sitting atop several whiskey cases. His estimate of the distance he fell also varies.
While it is true the record reflects the inconsistencies pointed out by the defendant, nonetheless plaintiff has adduced some corroborative evidence. His daughter testified that on June 3, 1964 her brother went to the Galvez Street wharf to drive plaintiff’s car home. Plaintiff had testified he was unable to drive when he left the job on June 2, 1964, the date of the accident according to his testimony.
In order for this Court to conclude plaintiff failed to prove the occurrence of an accident we would be compelled to find the trial court committed manifest error in accepting plaintiff’s testimony as true. The record does not warrant such a finding. We adhere to the oft-expressed view that a trial judge who hears and observes witnesses testify is in a much better position to judge credibility, and we do not feel the inconsistencies relied on by the defendant are sufficient to warrant a conclusion that the trial court committed manifest error in deciding plaintiff was telling the truth.
Nor do we agree with defendant’s second contention, that plaintiff failed to prove he was disabled as a result of the accident. In 1957 plaintiff underwent surgery for a protruding disc between the L-3 and L-4 interspace. The operation was performed by Dr. Randolph Page, a neurosurgeon. Plaintiff again consulted Dr. Page on July 28, 1964, within seven weeks of the accident. Prior to this time he had been treated by Browne-McHardy Clinic physicians; however, after his last visit on July 24, 1964, he became dissatisfied with the course of treatment and returned to Dr. Page. He was not discharged as cured by Browne-McHardy on July 24th, but had been told to return in three days.
Dr. Page diagnosed his condition as radiculitis or root inflammation between the L-3 and L^l interspace, on the side of the spinal column opposite to that which had been inflammed in 1957. Dr. Page related the condition to trauma and said it was reasonable to conclude this injury was caused by plaintiff’s accident of June 2, 1964. Dr. Page positively stated the injury he saw in 1964 was not a recurrence of symptoms of the first injury. As we have pointed out, Dr. McDonough with Browne-McHardy also conceded plaintiff was injured. Defendant’s doctors at Browne-McHardy diagnosed plaintiff’s injury as a sacroiliac strain and from the extent of their treatment (10 examinations and 26 physiotherapy treatments) they obviously found an injury.
The medical opinions of three other doctors were obtained by defendant and introduced in evidence. While they tend to conclude plaintiff was exaggerating his condition, we note they merely examined the plaintiff and did not treat him. We are much more impressed with the medical evidence of the treating physicians, one of whom appeared for the defendant and the other who testified on plaintiff’s behalf. Based on the testimony of Dr. Page, we find plaintiff has causally connected his disability with the accident and thus has proved he suffered a compensable injury-
Having reached this point, we must now decide whether plaintiff has established he is not able to perform work of a similar character to that he could undertake before his 1964 injury. Plaintiff testified his duties required him to climb into hatches of ships, move heavy cases, run up and down gangplanks 60 to 70 feet high, and on occasion climb Jacob’s ladders. Dr. Page testified that while plaintiff might be able to climb a ladder occasionally, he could not undertake the amount of climbing his job required without seriously risking reinjury to his back.
*176 Two of plaintiff’s neighbors testified he has greatly curtailed his physical activities around the house since this accident and plaintiff states he is unable to do any strenuous labor. Before 1964, plaintiff had engaged in heavy manual labor.
The record reflects plaintiff’s back injury of 1957 had subsided when the second accident occurred. Although undoubtedly he was more prone to reinjury after having suffered a herniated disc, his accident in 1964 was not simply a manifestation of the old symptoms, but was a new injury superimposed on the old. Before the 1964 accident, plaintiff worked as a manual laborer. After 1964 he was able to perform only much lighter tasks. He was fired from one job as a counterman at Royal Castle in 1965 because he was unable to stand on his feet the time the job required. We agree with the trial judge’s finding that under our law plaintiff was disabled.
In his answer to this appeal plaintiff seeks the statutory penalties and attorney’s fees provided by LSA-R.S. 22:-658 for which the insurer becomes liable upon its failure to make timely payment of the claim “ * * * when such failure is found to be arbitrary, capricious, or without probable cause * * * The instant case presents a close question and the defendant-insurer was well within its rights in resisting the claim. Clearly its failure to pay, based as it was on substantial bona fide factual contentions, was not arbitrary, capricious or without probable cause. See Long v. Hardware Mutual Insurance Company, La.App., 137 So.2d 486.
Finally, plaintiff’s answer seeks an increase in the medical expert fee from $100 to $200. There is nothing before us to indicate such an increase is warranted.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.