DOMENGEAUX, Judge.
This is a declaratory judgment suit filed by the City of Alexandria against Theresa M. Perkins, widow of Bobby Wayne Perkins, individually and as natural tutrix for her four minor children. Perkins was employed by the Alexandria, Louisiana, Fire Department for twelve and one-half years prior to his death by apparent heart attack on May 17, 1972, which occurred while in an off duty status. The City of Alexandria has been paying workmen’s compensation death benefits to the widow and minor children since Perkins’ demise and the City now seeks a decree terminating the benefits and for recovery of those sums already paid. From a judgment in favor of the defendant, Theresa M. Perkins, the City of Alexandria has prosecuted this appeal.
The facts are that at the time of decedent’s death his specified title, as a fireman, was that of chauffeur or driver of a large eighty-five foot “ladder fire truck”. His duties, other than general fire fighting, included making sure that the truck ladders were in proper place when needed.
Dr. William H. Brown, a general practitioner of Alexandria, was the family doc *684 tor and treating physician of Bobby Perkins from January, 1966, until his death in May, 1972. Doctor Brown testified that he had seen the decedent twenty-two times over the six year period. In June 1968 he treated Perkins for hypertension or high blood pressure and was of the opinion that such a condition leads to heart disease. Subsequently Perkins was hospitalized for a heart attack from December 29, 1970, through January 16, 1971. Doctor Brown indicated that the attack caused heart damage. On February 9, 1972, (some three months prior to his death) Perkins suffered further heart difficulty, termed a “right bundle branch block”, which also caused additional heart damage. Doctor Brown did not subsequently treat the decedent.
On the night shift prior to Perkins’ death fire alarms went off at the station five times, at 4:30 P.M., 7:50 P.M., 4:09 A.M., 4:32 A.M., and 4:44 A.M. All of the calls were false alarms, but the decedent had to take the aerial ladder truck out on both the 4:09 A.M. and 4:32 A.M. calls. He was awakened only once, at the 4:09 A.M. call, and had not yet gone back to sleep when the two later alarms were sounded.
Captain Jessie P. Sharbono was house captain and direct supervisor of Perkins on his last shift. Sharbono testified that the general duties of a fireman created constant tension and anxiety with the firemen always wondering when an alarm might go off. He described the pandemonium surrounding a night alarm which would startle the sleeping firemen because of its loud tone, with each having to subsequently dress hurriedly, slide down poles to the bottom floor, and stand by their units for instructions. It was also the testimony of Sharbono that the ladder truck was very difficult to drive because of its size and manual steering and that the driver was subject to much physical stress and strain. On the morning after the final 4:44 A.M. alarm, Sharbono testified that Perkins looked tired and very haggard and expressed his hope that the 4:44 A.M. false alarm would be the last call out.
Edwin Paul, a local policeman, neighbor, and friend of the decedent, testified that when Perkins finished the shift on the morning in question he looked pale and not himself and expressed tiredness.
Mrs. Theresa Perkins stated that her husband came home about 7:00 A.M. and was very tired and sleepy, so he postponed a morning fishing trip. Shortly thereafter he went to the hospital for about an hour to shave his father-in-law, returned, refused coffee, and immediately went to bed. About 10:00 A.M. Mrs. Perkins testified she heard a snoring noise, went in to her husband, and discovered that he had died. Although the decedent did not complain of pain prior to his death it was his wife’s testimony that his normal nature was not to complain and that he usually simply retired to bed when hurting.
The plaintiff, the City of Alexandria, commenced workmen’s compensation payments after Perkins’ death but reserved the right to reclaim the sum if the court should later decree that such was not payable. Subsequently on September 7, 1972, suit was filed by the City of Alexandria to determine if they were liable for workmen’s compensation benefits. Intervening in the suit were the Professional Fire Fighters Association of La., AFI^CIO (on behalf of the widow and children of the deceased fireman) and the Louisiana Municipal Association (on behalf of the City of Alexandria).
It was and is presently the City’s contention that' there should be no recovery under the Louisiana Workmen’s Compensation Act because the decedent’s death was neither caused by an accident in the course of and arising out of his employment, nor was it the result of an occupational disease listed in LSA-R.S. 23:1031.1. Instead it is argued such was the result of natural causes and in no way related to or aggravated by the work of a fireman. It is also the City’s assertion that LSA-R.S. 33:2581 *685 (Act 337 of the 1968 Legislature) did not amend the workmen’s compensation statute so as to include the decedent under the latter, and alternatively, if it did, that the 1968 act is unconstitutional.
The trial judge ruled that the decedent’s wife had proven by a preponderance of the evidence that her husband’s death resulted from or was related to the nature of the work he performed. Coupled with the presumption of Act 337 of 1968 (that the disease was contracted during the employment) he found workmen’s compensation death benefits were due.
The only issue before us is whether the defendant, Theresa Perkins, and her children are entitled to workmen’s compensation death benefits as a result of the decedent’s fatal heart attack.
As pointed out in the decision of this court in Weber v. McLean Trucking Company, 265 So.2d 628 (La.App. 3rd Cir. 1972), it is settled in our jurisprudence that benefits are due under the Louisiana Workmen’s Compensation Act in cases involving heart conditions resulting in disability or death, whether or not the condition is pre-existing, when caused, precipitated, or accelerated by even the usual and customary activities, exertions, and other facts directly connected with the employment. See: Vicknair v. Avondale Shipyards, Inc., 220 So.2d 580 (La.App. 4th Cir. 1969).
In Weber the decedent was a heavy duty truck driver and had suffered severe heart ailments with first manifestations at least seven years prior to his death. Immediately preceding decedent’s death, he had driven a heavy tractor-trailer unit all day in hot weather and after arriving at home complained of fatigue and chest pains. After resting for a short period the decedent suddenly died from coronary insufficiency while present at the loading of some of his cattle for a rodeo. We found the cause of his death to be work related even though death occurred while on off-duty status.
The facts of this case are similar to those in Weber, with the exception that herein the decedent made no outward complaints of pain prior to his death. However, the absence of such complaints or signs of pain prior to the heart failure in our opinion is not sacramental to the success of plaintiff’s case. See: Smith v. Kaiser Aluminum & Chemical Corp., 269 So.2d 605 (La.App. 4th Cir. 1972); Turner v. Howard Motors, Inc., 192 So.2d 205 (La.App. 4th Cir. 1966).
The record clearly indicates that the decedent’s heart condition developed during the period he was employed as a fireman. The crucial question is therefore whether the defendant proved that her husband’s death was causally connected with the work effort in discharging his customary duties of a fireman.
As aforementioned, the trial judge found causal connexity between the decedent’s work and his subsequent fatal heart attack. In so ruling he relied first upon the testimony of Dr. William A. Brown, the treating physician of the decedent. Doctor Brown, upon being posed with one hypothetical question, outlining a set of conditions allegedly surrounding Bobby Perkins’ death, found a causal connection between the decedent’s working activities on the night of May 16 and his death the following morning. Doctor Brown was, however, also given another hypothetical situation, (posed by plaintiff’s attorney) somewhat different from the first, and the doctor stated that under that hypothet he could not say with any degree of probability that the job caused the decedent’s fatal heart attack. The first hypothet in our opinion outlined fairly accurately the conditions immediately preceding Perkins’ death as testified to by his wife, Captain Sharbono, and Edwin Paul. To the contrary, we feel the second hypothet was not as complete and was less accurate as to the established facts.
Dr. John A. Worley, specializing in internal medicine, also testified. Although this doctor never had occasion to treat or *686 examine the decedent his testimony is to the effect that he did not believe work as a fireman would cause heart disease, and upon being given a hypothet, similar to the first one heretofore mentioned, found no relationship between the decedent’s activities and his fatal heart attack.
The trial judge found the medical testimony conflicting and in his discretion chose to rely upon the testimony of the attending physician, Doctor Brown. We find no manifest error in such action. See: Touchet v. Fidelity & Casualty Co. of New York, 264 So.2d 752 (La.App. 3rd Cir. 1972); Carrier v. Aetna Casualty & Surety Co., 186 So.2d 445 (La.App. 1st Cir. 1966); Rusk v. Allstate Ins. Co., 167 So.2d 205 (La.App. 3rd Cir. 1964).
In regard to the other evidence presented the trial judge reasoned as follows :
“.Certainly a fireman, with preexisting heart disease and damage, awakened five times from a sound sleep by a loud buzzer, who must hurriedly dress, raced [sic] down stairs or a fire pole to his unit, and manhandle an 85 foot aerial truck on two occasions within an hour period, who seems pale, tired and haggard, cancelled planned morning activities, and goes to bed (which is his normal habit when he is in pain) has proven to this Court that its more likely than not that his work activities were causally connected and related to his subsequent heart attack resulting in his death.”
Under the foregoing we concur in the trial judge’s findings that defendant has shown by a preponderance of the evidence that the heart attack and death of her husband was the direct result of the nature of the work he performed. As aforementioned, no serious dispute exists to the fact that decedent developed his heart condition during the period he was employed as a fireman. The evidence further shows in our opinion that the exertion, stress, and strain occasioned by Perkins duties on the night prior to his death caused, precipitated, or accelerated the subsequent fatal heart attack. As a result Theresa M. Perkins and her children are due death benefits under the Louisiana Workmen’s Compensation Act.
By reason of this holding, we need not pass on the questions raised by the plaintiff-City in respect to the defendant — wife (and her children) being entitled to workmen’s compensation death benefits under LSA-R.S. 33-2581, and the alleged unconstitutionality thereof.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant’s costs.
Affirmed.