SAVOY, Judge.
The instant case and the case bearing the same title, 194 So.2d 408, on the docket of this Court were consolidated for trial in the district court as they involved the same defendant and the same land. Accordingly, *405 the written reasons assigned in the instant case will apply to case number 1879 of this Court’s docket. Separate decrees will be rendered as was done by the district judge.
We are attaching a copy of a portion of a plat which was taken from the record in case number 1878 which shows the land and improvements involved in this litigation.

*406 The trial judge, in a well written opinion, has disposed of all of the issues in these cases; and we adopt his opinion as our own, to-wit:
“These two expropriation suits, filed by the State of Louisiana, through the Department of Highways, under the provisions of R.S. 48:441-4-60 in connection with the construction of Interstate Highway No. 10, were consolidated for trial because they involve takings of two portions of a single tract of land owned by the defendant, Hammy Fontenot, and also all rights of access from the remainder to the public highway.
“Before the expropriations, the defendant’s property was a triangular tract of land containing 4.938 acres, fronting 1,041.-05 feet on the south side of U. S. Highway 90 with depths of 485.2 feet and 1274.1 feet on its easterly and westerly sides, respectively. Access to Highway 90 was limited to about the easterly 600 feet of the tract due to the location of a Department of Highway’s weighing station on the right-of-way at this point. The land had been cleared and improved, and when the suits were filed there were situated thereon a commercial building known as the ‘Palomino Lounge’, the defendant’s residence, shell driveways and a parking area, a large neon sign, a water well and piping, and other appurtenances.
“All of the witnesses agreed and it is obvious, that the highest and best use of the property was — as it was being used in this instance — for a highway commercial establishment, such as an owner-occupied night club, to attract customers principally from Orange, Texas, a few miles to the west.
“In Suit No. 60,506, filed on January 21, 1964, the State took full ownership (except for mineral rights) of Tract 4 — 5, a narrow strip at the northeast corner adjacent to the highway containing .195 of an acre, and all rights of access from the remaining 4.743 acres to the highway. In doing so, there was deposited in the Registry of the Court $41,529.00, which, according to the estimate of just compensation attached to the petition, consisted of $405.00 for the land and improvements taken and $41,124.00 as severance damages to the remainder. This sum was withdrawn by the defendant on February 24, 1964. However, his pleadings reflect he contends that as a result of this expropriation he is entitled to $1540.00 for land and improvements taken and severance damages in the total sum of $101,014.80.
“Suit No. 64,280 was filed on February 1, 1965, and in it the plaintiff took title (except for mineral rights) to Tract 4-5-R-l and the improvements thereon. This tract consisted of 1.527 acres of the defendant’s land from which only the rights of access were taken in the first expropriation. The Highway Department deposited with the Court $3,129.00 for the land and improvements taken, and this sum was withdrawn by defendant on March 17, 1965. However, in his answer, as amended, the defendant claims $54,649.60 as the market value of the land and improvements taken, plus $20,518.00 as severance damages to the remainder.
“Thus, there is presented to the Court for determination simply the amount to which the defendant is entitled as just compensation for the partial takings of his land and improvements and the severance damages resulting therefrom.
“Basically, the law to be applied in making such determination is set forth in State [Through Department of Highways] v. Babineaux, No. 1755, La.App., 3 Cir. [189] So.2d [450], as follows:
“ ‘Under the highway expropriation jurisprudence, the usual compensation for the land taken should be based upon the-market value of the property taken — the price which would be agreed upon by a willing buyer and a willing seller — with' the prices paid in recent sales of similar property in the vicinity ordinarily being the best criterion of the market value of the property taken. Gulf States Utilities Co. v. Norman, La.App., 3 Cir., 183 So. *407 2d 421, and the many decisions cited therein. In addition, the landowner is entitled to any severance damages sustained by the remainder of his property left after the taking, being the difference between the market value of such remainder just before the taking and its value at the time of the trial. LSA-R.S. 48:453. State [Through Dept. of Highways] v. Lancon, La.App., 3 Cir., 174 So.2d 257, and cases cited therein.’
Also, the highway expropriation statute expressly provides that the landowner has the burden of proving his claim for additional compensation. LSA-R.S. 48:453.
“There were five realtors who testified at the trial. William B. Coleman and Darrell V. Willett had appraised the property at the instance of plaintiff, and Joseph R. Palermo and Dalton J. LeBlanc had done so for the defendant. Forrest K. White had made only a ‘preliminary appraisal’ or ‘general estimate’ of the property at the request of the defendant, and gave no reason why his appraisal was not completed. Since Mr. White indicated that his preliminary estimate might not be his final evaluation, little, if any, weight can be given to his testimony. However, it is noted that the total value he assigned to the entire property before the first taking was much closer to the appraisals of the plaintiff’s witnesses than the defendant’s. Their figures in this respect, according to the Court’s calculations, seem to be:
“Willet $47,140.00
“Coleman $51,000.00
“White $59,500.00
“LeBlanc $98,440.50
“Palermo $98,524.80
“Without going into great detail, the Court will say that it was much more impressed with the qualifications and the reasons given by Messrs. Coleman and Wil-lett in arriving at their evaluations of the market value of the property and the dam.ages resulting from these expropriations -than those of the two witnesses who had made final appraisals for the defendant. The opinions of the former were based on comparable sales of land in the immediate vicinity of the subject property which took place prior to the time that the plans for this highway project were finalized. Although it was necessary for them to make adjustments for differences in time between the sales and the clearing and improvement of the subject property, the adjustments appear to be fair and reasonable. On the other hand, Mr. LeBlanc relied solely on his ‘experience’ and ‘judgment’ in arriving at the market value of the land, and Mr. Palermo, in reaching a similar conclusion in this respect, relied on a purchase by the defendant subsequent to this expropriation of a tract of land located at the base of the first interchange and point of exit on Interstate Highway No. 10 to the east of the Texas border. Besides the peculiar location and the improved condition of the property involved in that sale, it is of doubtful value as a comparable because of the fact that the sale took place after the present taking. State [Through Dept. of Highways] v. Dodge, 3 Cir., 168 So.2d 430.
“All of the witnesses made their appraisals of the improvements on the basis of their experience and general knowledge of building costs. However, both Messrs. Coleman and Willett also used recognized cost publications that are customarily employed by appraisers in this area as the basis for building evaluations. Suffice it to say, here again the Court was more impressed with the methods employed in this respect by the plaintiff’s witnesses than those of the defendant’s. Indeed, it is difficult to understand how a building of the type of construction as the Palomino Lounge could cost ten or eleven dollars per square foot to construct.
“All things considered, the Court believes that a total award of $47,250.00, based largely on Mr. Coleman’s appraisal (employing the market data and cost of reproduction approaches and eliminating the adjustment which he made as a result *408 of his income approach), reasonably and fully compensates the defendant for the market value of the parcels taken and the severance damages resulting to the remainder of his property from these expropriations. Certainly, the defendant has failed to establish by a preponderance of the evidence that he is entitled to compensation in a greater amount.
“This Court, therefore concludes that at the time of the first expropriation the market value of the defendant’s land and improvements was:
“Land $ 11,110.00
“Improvements $ 41,590.00
“Total $ 52,700.00
“After this taking the remaining property had a value of:
“Land $ 2,750.00
“Improvements $ 4,800.00
“Total $ 7,550.00
“Thus, the award to which the defendant is entitled for the expropriation in Suit No. 60,506 is $45,150.00. $450.00 of this sum represents the market value of the land taken, and the balance, $44,700.00 is for severance damages. In addition, as a result of the expropriation in Suit No. 64,280 the defendant is entitled to $2100.00, which is $300.00 for the land taken and $1800.00 for the improvements thereon. No severance damages resulted from this taking. From the aggregate award of $47,250.00, of course, there must be deducted the amounts heretofore deposited by the plaintiff and withdrawn by the defendant totalling $44,-658.00. Therefore, an additional sum of $2,592.00 will be awarded defendant as a result of the expropriations in these two consolidated suits. Inasmuch as this award is in excess of the sums deposited by the plaintiff in the Registry of the Court, the costs of Court will be assessed to the plaintiff.”
For the reasons assigned, the judgment of the district court is affirmed at appellee’s, costs.
Affirmed.