216 So.2d 360 (1968)
PARISH OF EAST BATON ROUGE, Plaintiff-Appellant,
v.
S & H HEATING COMPANY, Inc., Defendant-Appellee.
No. 7476.
Court of Appeal of Louisiana, First Circuit.
November 12, 1968.
*361 R. Gordon Kean, Jr., Charles E. Pilcher and J. Dawson Gasquet, Baton Rouge, for appellant.
Bobby L. Forrest, of Forrest, Kiefer & Hubbs, Baton Rouge, for appellee.
Before LANDRY, REID and SARTAIN, JJ.
SARTAIN, Judge.
This is an expropriation suit where the Parish of East Baton Rouge in the furtherance of an extensive drainage program seeks to widen and improve Ward's Creek. Defendant owns property which is situated to the west of Ward's Creek with the rear portion thereof extending to a point near the center of the existing creek bed. The portion of defendant's property falling within the existing banks of the creek is, of course, burdened by a servitude of drainage. The program calls for the widening of the creek and the straightening of its banks and requires a total of 6,580 square feet of defendant's property of which 1,146 square feet is adjacent to but outside of the existing channel and 5,484 square feet falls within the present banks of the creek.
The trial judge assigned a value of $1.75 per square foot to the 1,146 square feet or the sum of $2,005.50 and the arbitrary figure of $18.75 for the 5,484 square feet located within the existing channel. Defendant was also awarded the sum of $750.00 for severance damages and expert witness fees in the sum of $600.00 which were taxed as costs. The plaintiff was cast for all costs permitted by law.
Plaintiff has appealed devolutively contending that the evaluation of $1.75 per square foot for the usable portion of defendant's property is excessive and should be reduced to the sum of $1.15 per square foot or a total of $1,317.90 and that the award of $750.00 for severance damages is based on proposed future use by the owner which is "mere speculation" and should be disallowed.
Defendant did not answer plaintiff's appeal but in its brief and in oral argument before this court its counsel urged the affirmation of the figure of $1.75 per square foot assigned by the trial judge and also urged additional relief in greater severance damages, an increase in the amount of $18.75 assigned to the property falling within the present channel of the creek, and for attorney's fees. Because defendant-appellee's brief cannot be considered and given the effect of an answer in proper form we cannot consider the additional relief now sought by appellee. CCP Article 2133; Rader v. Rader, La.App., 126 So.2d 189; Krizan v. Storz Broadcasting Co., La.App., 145 So.2d 636; State through Department of Highways v. Bjorkgren, La. App., 147 So.2d 905. Accordingly, the issues before us for resolution are two-fold, namely; the assigned value of $1.75 per square foot and the granting of $750.00 to defendant as severance damages. For reasons hereinafter stated we concur with the trial judge in his determination that the 1,146 square feet of defendant's property located outside of the existing channel is worth the sum of $1.75 per square foot. However, we must disagree with the assessment of $750.00 as severance damages *362 and the award of this amount to defendant. In all other respects, the judgment of the trial court should be affirmed.
Defendant's property is an irregular shaped lot fronting 283 feet on the east side of Beck Street by a depth of 235.4 feet on its southern boundary, 199 feet on its northern boundary and 281 feet across the rear or eastern boundary. The rear line of defendant's property generally parallels the center line of Ward's Creek. Plaintiff seeks the property in full ownership. The necessity of the taking is not questioned. Defendant's property is zoned M-1, light industrial, and it was uniformly agreed that its highest and best use is for the purposes permitted under this zoning regulation.
The plaintiff used two expert witnesses, Messrs. Clifford Doiron and Charles H. Farrier. Defendant relied on the expert testimony of Mr. Theodore Wilkes. We shall discuss the testimony of these witnesses in the order mentioned.
Mr. Doiron using the market data (comparable sales) approach determined that the value of defendant's property was $1.15 per square foot. He used nine sales which he considered comparable. They ran from a high of $1.75 to a low of $.20 per square foot. They ranged in size from 11,550 square feet to 46,308 square feet. Front footage value ranged from $1.50 to $2.50 per front foot. The nine sales occurred between September of 1962 and June of 1967. Three of the comparables used by Mr. Doiron were not in the general vicinity of the subject property but because they were zoned M-1 and of similar use as the subject property the witness considered them important to his study. He admitted that these three sales were seven to ten minutes from the subject property in "time distance wise, in deliveries". He concluded his summary by stating that in his opinion the overall property of defendant was worth $1.25 per square foot but that only 90% of it was usable and therefore he reduced it by some $.13 and rounded the figure out to $1.15 per square foot.
Using the $1.15 value to the 5,484 square feet of defendant's property located within the banks of Ward's Creek, the witness discounted the value thereof at 6% for ninety-nine years to arrive at the figure of $18.60 for what the witness termed to be the "unusable" portion of defendant's property. Mr. Doiron stated that the balance of defendant's property was not damaged by the taking because the 1,146 square feet of usuable land was beyond a fence that ran along and parallel to the creek bank. The witness opined that the defendant and its previous owner had never used this land beyond the fence.
Mr. Farrier also utilized the market data approach and determined that defendant's property was worth $.95 per square foot. In his testimony, he described five sales that he considered pertinent to his evaluation of the subject property. Three of the sales were the same as used by Mr. Doiron consisting of the sale from defendant's vendor at $.76 per square foot, a corner lot located on Beck and near the subject property at $1.28 per square foot and the sale of a lot directly across the street from the subject property at $1.25 per square foot. He checked the sale of two other pieces of property located at the end of Beck Street but fronting on Florida Boulevard. These sales amounted to $1.82 and $.73 per square foot respectively. The witness's use of the latter two sales was to confirm his belief that property on Florida Boulevard brought a higher price than the property on Beck Street. The witness stated that in his opinion in the four years following defendant's acquisition property values had increased by 25%. Accordingly, he took defendant's cost of $.76 and added $.19 for the increase in value to arrive at the figure of $.95 per square foot. The witness stated the property across the street which brought $1.25 was about one-half as deep as the subject property. It was his observation that generally property with greater depth brought a lesser amount per square foot than did property with a shorter depth. He assigned the arbitrary sum of $1.32 for the portion of defendant's property that *363 fell within the banks of the creek. Like Mr. Doiron he was of the opinion that defendant's property suffered no severance damages by virtue of the taking because all of the usable land was beyond the fence that paralleled the creek.
Mr. Theodore Wilkes, defendant's expert, testified that he also used the market data approach and in so doing concerned himself with eight sales all of which were on Beck Street in the immediate vicinity of the subject site and similarly zoned. These sales commenced in September of 1956 and ran through June of 1967. They were listed chronologically by Mr. Wilkes with the earliest sale showing a consideration of $.45 per square foot and the latest sale showing a consideration of $1.75 per square foot. It was Mr. Wilkes' opinion that these sales over a ten year period reflected a gradual steady increase in property values. We note that all but one of these sales originated from a Mr. Watts who subdivided the property along Beck Street into six tracts of land and whereas he purchased the property for $.59 per square foot he later resold them in smaller parcels for $1.40, $1.25, $1.37, $1.33 and $1.25 per square foot respectively with the last of these sales taking place on January 28, 1963. The resale of Tract D on June 30, 1967 was for $1.75 per square foot, some four years later, which Mr. Wilkes states confirms the continued increase in property values. He therefore concluded that defendant's property as of the date of the taking was worth $1.75 per square foot.
Thus we see from the testimony of the above witnesses that the value assigned by each on a square foot basis are $1.15 by Mr. Doiron, $.95 by Mr. Farrier and $1.75 by Mr. Wilkes. The trial judge accepted the value of $1.75 as set by Mr. Wilkes. We think this decision is well founded in both fact and law.
This case presents a variety of opinions representing the individual thoughts and professional thinking of three competent experts and the ultimate decision must rest with the trier of fact in determining which expert he is to accept. It is axiomatic that in the trial of a case such as this much discretion is granted to the trial judge in the evaluation of and the weight to be given to the testimony of each expert witness and his findings of fact are not to be disturbed on appeal unless such findings are clearly in error.
It is equally well established that the testimony of each expert witness is to be accorded equal weight when such testimony appears to be grounded on well established facts and is supported by sound reasoning and good judgment. The judge a quo undoubtedly determined, and we think rightly so, that the testimony of Mr. Wilkes was grounded on well established facts and supported sounder reasoning. Just to mention several factors that compel us to agree with the trial judge is that the value assigned by Mr. Farrier of $.95 per square foot is $.30 less than the consideration paid for property directly across the street notwithstanding the fact that Mr. Farrier was of the opinion that property values in this area had increased 25% during the past four years. We also question very seriously the comparability of three sales used by Mr. Doiron which were seven to ten minutes travel time from the subject property. Accepting Mr. Doiron's appraisal of $1.25 and adding to it the 25% increase we would come up with a minimum appraisal value of $1.55.
The approach by Mr. Wilkes of using as comparables only property fronting on the same street and located in the immediate vicinity of the subject property appears to us to be more logical and founded on sounder reasons.
We now direct our attention to the question of severance damages and must resolve this issue in favor of appellant. The payment of damages in consequence of an expropriation, referred to as severance damages, and as required by LRS 19:2.1, subd. A(3) has been clearly defined as the difference between the market value of *364 the condemned land immediately before and immediately after the expropriation. State through Department of Highways v. Williams, La.App., 131 So.2d 600; Gulf States Utilities Co. v. Norman, La.App., 183 So.2d 421; State through Department of Highways v. Babineaux, La.App., 189 So.2d 450; and State through Department of Highways v. Fontenot, La.App., 194 So.2d 404.
Defendant's criteria for the measurement of severance damages is directed to what defendant contends is the total permissive use before the taking as compared with the total permissive use after the taking. Mr. Wilkes explained that with the construction of a retaining wall along the rear of defendant's property extending out eight feet into the canal at one corner and three feet at the other together with the soil fill required to level the reclaimed portion, defendant would then be permitted to construct a total of 22,437.2 square feet of rental area and provide seventy-five parking spaces. He states that after the taking defendant will not be permitted to construct a retaining wall or revetment and that he will only be permitted to construct 20,036 square feet of rental area and provide sixty-six parking units. Thus reasons Mr. Wilkes that defendant is deprived of the ultimate rental of 2,401 square feet. His analysis is thorough and much attention was given to detail including the cost of the retaining wall, the fill, projected construction costs for the additional buildings and estimated rental. He also took into consideration added taxes, insurance, etc. At the present time, however, defendant has only 10,436 square feet of rental area. The proposed plan would in effect call for doubling the existing rental area and securing tenants therefor. This in our opinion cannot be the basis to support the payment of damages because it is predicated on conjecture and speculation.
Our courts have recognized and awarded damages for the interference with an owner's ingress and egress. State v. Dowling, 205 La. 1061, 18 So.2d 616; the creation of something inherently dangerous on adjacent property, Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260; the reduction of diminution of services, State through Department of Highways v. Caldwell Brothers Real Estate Inc., La.App., 155 So.2d 231; compensation for loss of lease rights, State through Department of Highways v. Ferris, 227 La. 13, 78 So.2d 493. However, severance damages have been denied for ordinary business losses, moving the business, loss of anticipated profits while moving. Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40.
In the instant matter defendant used what is termed the "income approach" and reasons that the taking of the rear portion of its property damages the balance because defendant is denied the right and the opportunity to fully utilize his property. This in our opinion is speculation because at the time of the taking defendant had no plans in operation for the utilization of its property as projected by Mr. Wilkes. To remove his hypothesis from the realm of speculation it would have been necessary for defendant to have in fact secured lease commitments prior to the taking or be otherwise irrevocably committed to the full anticipated utilization of his property. The reasoning behind the denial of severance damages on a projected income approach is that the choice of proceeding rests solely within the owner. Accordingly, under the circumstances of this case we must hold that the trial judge committed manifest error in awarding $750.00 to defendant as severance damages.
For the above and foregoing reasons the judgment of the district court is amended to delete therefrom the award of $750.00 to the defendant as severance damages; in all other respects the judgment of the trial court is affirmed and appellant is cast for all such costs as permitted by law.
Amended and affirmed.