LOTTINGER, Judge.
This is a suit instituted by the Parish of East Baton Rouge, Louisiana, as petitioner, against Leo P. Seaman, as defendant, for the expropriation of certain lands in the Parish of East Baton Rouge, and by judgment dated September 21, 1967, the Lower Court awarded judgment in favor of petitioner and against defendant awarding to petitioner free of all encumbrances, the full and complete ownership of the property sought to be expropriated, and a temporary construction servitude over and across other properties. This judgment decreed that the price to be paid for the expropriation was to be determined at a later date, based on evidence to be offered at that time.
Subsequently, by judgment dated August 22, 1969, the Lower Court rendered judgment in favor of defendant and against petitioner, in the sum of $19,240.00. It is from this latter judgment that the petitioner has taken this appeal. In its reasons for judgment, the Lower Court found as follows:
“This expropriation suit was brought by the Parish of East Baton Rouge to acquire a portion of a tract of land owned by Leo Seaman for the purpose of widening and improving Ward Creek which lies adjacent to defendant’s property in the City of Baton Rouge. This was a judicial expropriation since plaintiff was unable to acquire the needed site by negotiation with defendant, the tender of $7,000.00 having been refused. The present proceeding was conducted in order to determine the measurements of the area taken and the value thereof, together with the value of the temporary servitude, needed for construction purposes, and the severance damage, if any, to defendant.
It is apparent from defendant’s answer and brief that he does not now contest the necessity for the taking and is seeking only a determination of the issue of just compensation for the property, which is situated north of a tract lying along the banks of Ward Creek and facing North Beck Street, which belongs to S & H Heating Company, Incorporated. The land belonging to S & H was recently involved in an expropriation proceeding which has already been decided by the First Circuit Court of Appeal and will again be referred to in this opinion.
The land expropriated in the instant suit consists of two types; the first, classified *870 ‘usable land’, is actually being used and is located above the canal bank; the second, called ‘canal area’, is below the canal bank and is subject to inundation when the water level in the canal rises but does not overflow the canal bank. Plaintiff contends that 9,990 square feet of land was taken, of which 2,250 square feet was ‘usable’ and 7,740 square feet was ‘canal area’. Seaman, on the other hand, maintains the area expropriated measures 10,452.33 square feet, comprised of 6,839.29 square feet of ‘usable’ land and 3,613.04 square feet of ‘canal’ area.
Testifying for the plaintiff with regard to the extent of the land area taken was Mr. James W. Justice, who visually examined the property subsequent to the survey. However, he did not himself survey the property and the surveyor who prepared the map from which he testified was not called as a witness. As a consequence his testimony is of little help in determining the exact footage acquired.
Plaintiff also called Mr. Meeker who testified he surveyed the property only three days before trial and was unable to testify with exactitude the amount of land expropriated.
Defendant’s witness, Mr. Carey Hodges, professional engineer, testified he supervised the making of a map for T. M. Wilkes, defendant’s appraiser. He calculated the area outside the canal was 6,838.29 square feet, which he stated was usable at all times; that the canal area was comprised of 3,613.04 square feet and was not usable. His fee for services in preparing survey map was $300.00.
Mr. Wilkes, appraiser, testified for defendant as to the value of the land taken, as well as to severance damages and the value of the temporary servitude of 7,860 square feet. Mr. Wilkes, using the market data approach, examined six or seven comparable sales of similar tracts in the immediate vicinity of subject property and arrived at a square foot value of $1.75 for the 6,038.-29 of usable land taken, totaling $11,966.-00, rounded off to $12,000.00. For the ‘canal area’ he placed a value of 25 cents per sqitare foot, or approximately $900.00.
In determining severance damage, Mr. Wilkes, taking the market value of the land before and after taking, estimated a decrease in value by $2,800.00. This was due to the fact that the land was zoned M-l, light industrial, and there is no dispute that its highest and best use is for such purposes. Mr. Hodges testified the property taken was being used in its entirety for the following purposes: truck-trailer parking or storage, motor storage, steel storage and other miscellaneous purposes. The remainder contained a skating rink, houses and parking lot. Located as the property is, on the corner of North Beck Street and North Street in the City of Baton Rouge, with light industrial zoning and access from two sides, the court is convinced that loss of over 6,000 square feet of space would appreciably reduce the market price if this lot were placed on the market for sale.
With regard to the value of the temporary servitude established for construction purposes defendant’s appraiser valued the use at 7% for two years and six months, arriving at the figure of $1,700.00. He testified his bill to defendant for services was $500.00 plus the $300.00 fee for the surveyor.
Defendant testified he actually expended $1,040.00 for labor costs in removing equipment from the space subject to the temporary servitude, which has, as yet, not been released. He contends since he used his own materials and supplied his own time and labor in moving this equipment over a period of eight weeks, he asks reimbursement of a total of $3,340.00 as expenses. The court is convinced, however, the award for the temporary servitude and actual expenditure for labor to clear the area for the servitude will amply compensate defendant for this item.
Mr. Doiron and Mr. Farrier, appraisers for plaintiff, used the market data approach *871 but took into consideration ‘comparables’, some of which were located some distance from subject property.
While the court does not consider binding the recent case of Parish of East Baton Rouge v. S & H Heating Co., Inc., decided by the First Circuit Court of Appeal on November 12, 1968 [216 So.2d 360] nevertheless, it is cognizant of that case which involved the identical question here involved with the exception of the location and use of the property. S & H Heating Company owns the tract, approximately the same size as defendant’s property and located immediately to the south thereof.
The same witnesses appeared in that case as did in this, and the appellate court, after a thorough analysis of the testimony, concluded the trial judge has not abused his discretion in adopting the appraisal of Mr. Wilkes that the property was worth $1.75 per square foot. In commenting on the testimony of the experts, the appellate court stated:
‘The approach of Mr. Wilkes of using as comparables only property fronting on the same street and located in the immediate vicinity of the subject property appears to us to be more logical and founded on sounder reason.’
The court is convinced the defendant is entitled to recover, as just compensation, the following sums:
(a) Fair market value of land taken $12,900.00
(b) Temporary servitude 1,700.00
(c) Severance damages to ’ remainder 2,800.00
(d) Expenses of removal 1,040.00
(e) Services of appraiser 500.00
(f) Services of surveyor 300.00
The following expert witness fees are fixed as shown, and taxed as costs: to be paid by plaintiff.
Carey Hodges $50.00
E. B. Pugh 50.00
Charles H. Farrier 50.00
Theodore H. Wilkes 100.00
Formal judgments in accordance with the above reasons will be signed by the Court.”
There are two issues involved in the matter before this Court at this time:
(1) The amount of usable land outside the banks of the old creek, and
(2) The fair market value of the usable land.
We believe that these two issues were correctly adjudicated by the Lower Court, and find no error in its decision, and for the reasons assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.