BLANCHE, Judge.
This is a devolutive appeal taken by plaintiff, Parish of East Baton Rouge, from a judgment in an expropriation suit. The only issue on appeal is the correctness of the trial court’s award of just compensation and severance damages in favor of defendant-landowner, Mark O. Bozeman. Finding no manifest error committed by the trial judge, we affirm.
The trial judge rendered Written Reasons for Judgment, from which we approvingly reproduce the following excerpts:
“This is an expropriation proceeding. Plaintiff, hereafter referred to as ‘Parish’, filed this proceeding to obtain the east portion of Lot 14, Square 26 of East Fairfields Subdivision. Said lot is located at the southwest corner of Adams and Brookstown in the Parish of East Baton Rouge. Prior to the taking, the lot in question had an 84 foot front on Adams Avenue and a front of 125 feet on Brookstown Drive. P-3 is a map showing the area to be acquired from Mark O. Bozeman, hereafter referred to as ‘owner’. Said map indicates that a total of 29.81 feet was to be taken off of that part of the tract which fronts on Adams. Off the northern or rear end of the lot a total of 29.62 feet was needed. The required area totaled 3,227.38 square *113 feet, and was shaped like an irregular rectangle.
* * * * * *
“The property in question was zoned prior to the taking as C-l and was the only lot in Square 26 so zoned. It abutted A-2 property. It was the only lot in said square 84 feet long. All the other lots were 50 feet long. There were no improvements on subject property. The lot after the taking still had more frontage than any other lot in Square 26.
“J. Clifford Doiron testified for the Parish. He felt the highest and best use of the lot both before and after the taking was for commercial purposes. He felt that the value of the whole property before the taking was $12,900 and used the square foot method in arriving at this figure. The lot had 10,307 square feet which he multiplied by $1.25. He felt the value of the part taken as part of the whole property before the taking was $4,034.23 inasmuch as the part taken had 3,227.38 square feet. Hence the value of the remainder before the taking had a value of $8,865.77.
“Mr. Doiron used several comparables. Taking each comparable and breaking it down he arrived at an indicated price per square foot. All of his comparables were zoned at least C-l. Most of the comparables were nearly identical in size. The time factor varied from March, 1966 until January of 1969. From these comparables he arrived at a figure of $1.25 per square foot.
“Mr. Doiron felt that the property sustained no severance damages because after the taking with the special benefits that accrued, its value was more than before the taking. The special benefits included a curb and gutter street on a four-lane soil cement street with a sidewalk 125 feet long.
“Oren Russell testified for the Parish also. He felt the highest and best use of the property was commercial also. He used the market approach with comparable sales which developed a $1.75 per square foot figure which projected a total of $18,034.00 for the subject property. He placed a value of $5,648.00 on the part taken and he found severance damages, because of parking problems created by the taking, of $566.00.
“Kermit Williams testified for the owner. He placed a total value before the taking on the lot of $22,500. He used $180.00 per front foot as his criterion and used the 125 foot frontage along Brookstown. He figured the part taken to comprise 31% of the lot and fixed the value of the part taken at $7,000 leaving a remainder value of $15,500 to the lot. However, he felt that the lot had sustained damages of 60% as a result of the taking and valued the remainder after the damages at $6,200.00. His estimate of just compensation was $9,300 for damages, $7,000 for value of the part taken, for a total of $16,300.
“John Lejeune also testified for the owner. He also used the same front foot basis as Mr. Williams did, however, he used $225.00 a front foot which projected a total value of the lot before the taking of $28,000 [$28,134], He also[1] used the depth table theory on a 4 — 3-2-1 basis and felt that the part taken had a value of 40% of the whole. Thus, the value of the part taken would be $11,200 and the value of the remainder, as part of the whole tract would be $6,880.00.
“He placed severance damages on the property of $6,880. And his estimate of just compensation was $18,134.00.
“All four of the appraisers were unanimous to the extent that they felt that the highest and best use for subject property was for a service store type com *114 mercial establishment. An illustration of such store is a Phil-A-Sack or Cracker Barrel type store. After the taking because of building restrictions, set back requirements, etc. this lot was severely hampered. In the Court’s mind it is very doubtful if the property could be sold for service type store purposes in its present shape. Very clearly the property has sustained damages as a result of the taking.
“While the Court agrees with the Parish that evidence as to offers of purchase are inadmissible in evidence, the Court does feel that the testimony of David Welch is entitled to some weight inasmuch’ as he was qualified as an expert specializing in sales of commercial real estate. His qualifications clearly indicated that he had purchased similar properties throughout the community at various times for service type stores. It was obvious to the Court that Mr. Welch had sufficient expertise to know what kind of property was needed for a service type store. He also could testify as to what the requirements in square footage would be for a service type store and he indicated that a store like Stop and Go could not operate with less than 1800 to 1900 square feet.
“The Court feels that even before the taking, on a front foot basis, frontage along Brookstown rather than Adams would be used by any prospective buyers or sellers. It is absolutely inconceivable for the Court to believe that a buyer of this property before the taking would situate a commercial establishment so that it would front on Adams rather than Brookstown.
“Before the taking this was an ideal location for a service type grocery store. Now its use as a service type store has for all practical purposes been completely destroyed because the remainder can not generate 1800 or 1900 square feet of building space after the parking requirements are met.
“The Court has examined the compa-rables of Mr. Williams. It has examined his computations as to valuations based on those comparables. It agrees with his computations and it agrees that the property was severely damaged by the taking. Accordingly the Court adopts the opinion of Mr. Williams that the estimate of just compensation for this taking is $16,300. There will be judgment accordingly in favor of Mark O. Bozeman. The appraisal fees to Misters Lejeune and Williams are fixed at $650.00. This includes their fees for court appearances.” (Written Reasons for Judgment, Record, pp. 26-30)
Plaintiff first complains that the trial judge erred in accepting the appraisal of Kermit Williams, for the reason that the values which he obtained for his comparables are allegedly erroneous in that they constitute “front foot values of narrow, inside lots,” which were then applied to “the long side of the lot fronting on North Ardenwood,” namely, defendant’s property. Our review of the record fails to disclose any such manifest error committed by the trial judge in accepting the appraisal of Mr. Williams. The record, for example, shows that Mr. Williams took this factor into account by reducing the front foot valuation reflected by his com-parables from $200 per front foot to $180 per front foot as the front foot valuation of the subject property due to its inferior depth. Applying this method of evaluating the subject property, Mr. Williams concluded that the subject property, prior to the expropriation, was worth $22,500. This evaluation compares favorably with that obtained by plaintiff’s own appraiser, Mr. Oren W. Russell, who appraised the subject property on a square foot, rather than a front foot basis, but nevertheless concluded that the subject property was worth *115 $18,034 immediately prior to the expropriation.
Much discretion is accorded to the trial judge in the evaluation of and the weight to be given to the testimony of each expert witness in an expropriation trial, and the findings of fact by the trial judge will not be disturbed on appeal unless such findings are clearly erroneous, Parish of East Baton Rouge v. S & H Heating Company, 216 So.2d 360 (La.App. 1st Cir. 1968); State Through the Department of Highways v. Potter, 204 So.2d 308 (La.App. 1st Cir. 1967). Our review of the record in this case fails to disclose any such manifest error committed by the trial judge in accepting the expert opinion of Mr. Williams as opposed to the opinions of the other appraisers.
Plaintiff next complains that the trial judge erred in accepting the testimony of David Welch, who testified concerning offers which he allegedly made to the defendant-landowner to purchase the property. This specification of error is likewise without merit, as the trial judge’s Written Reasons for Judgment clearly indicate that Mr. Welch’s testimony was considered only with regard to the question of whether or not the subject property qualified as the type of property on which a service type grocery store could be erected prior to the expropriation. (See excerpt from Written Reasons for Judgment reproduced above, Record, page 29.)
The award by the trial court of just compensation and severance damages in favor of the landowner is neither manifestly excessive nor inadequate and is, accordingly, affirmed. All costs of these proceedings, both in the trial court and in this court, are assessed to plaintiff, Sterkx v. Gravity Drainage District No. 1 of Rapides Parish, 214 So.2d 552, 556, 557 (La.App. 3rd Cir. 1968), writ refused, 252 La. 964, 215 So.2d 130.
Affirmed.

. The record fails to reflect where Kermit Williams used any depth table theory. (Footnote by this Court)