NEHRBASS, Judge.
This is an expropriation suit where the Parish of East Baton Rouge in furtherance of a drainage program seeks to widen and improve Brownsfield Lateral of Cypress Bayou. Defendant owns property which is traversed by an existing natural drainage ditch. The plaintiff seeks to expropriate a one hundred foot wide right of way across defendant’s property or a total of 3.573 acres. The program calls for widening and deepening of the existing ditch, and when completed the drainage canal will be approximately forty-five feet wide across the top, nine feet deep and have a width on its bottom of sixteen feet. The portion of the right of way falling outside of the canal will be used by the plaintiff for maintenance purposes.
The trial court assigned a value of $6,200.00 per acre to the 3.573 acres, or the sum of $22,153.00, and after new trial, awarded damages to the defendant in the sum of $34,100.00 for the additional cost of bridging the canal. Additionally, defendant, its successors or assigns, was granted a right of passage across the servitude, and plaintiff was cast for all costs.
Plaintiff has appealed devolutively contending that the trial court 'was in error in fixing the value of the land taken at $6,200.00 per acre. Plaintiff also contends that the fixing of damages at $34,100.00 for the cost of a bridge was manifestly erroneous.
Defendant has not appealed nor has it answered plaintiff's appeal. Consequently, the only issue before us is whether the trial court committed a reversable error in awarding compensation and severance damages to the defendant.
Defendant’s property comprises 39.534 acres, is rectangular in shape and fronts one thousand one hundred sixteen (1116) *861 feet on Thomas Road. The only access to this property is via Thomas Road which lies to the north. The proposed right of way meanders in a general east-west direction and completely traverses the property of the defendant before it turns north toward Thomas Road. After the proposed taking of the 3.573 acre right of way, there will remain north of the canal an irregular shaped area of 4.461 acres which will front one thousand sixteen (1,016) feet on Thomas Road. To the south of the right of way will remain an area of 31.500 acres which may be reached only by bridging the proposed canal. At present the property of the defendant is effectively severed by the existing ditch and bridging will be required, consequently, in regard to damages we are concerned only with the additional costs of bridging the canal.
Four expert witnesses were called to give their opinions as to the value of the land taken. All agreed that the highest and best use of the property is for residential subdivision development. Messers. Lynwood J. Roy and John C. Doiron were called to testify in behalf of the Parish of East Baton Rouge. Messers. John Le-jeune and Kermit A. Williams were called to testify on behalf of the defendant.
Mr. Roy used a comparable sales approach and determined that the value of 2.-683 acres of usable land falling outside of the existing ditch was $3,600.00 per acre or $9,659.00. He arbitrarily assigned a value of $1.00 to the acreage within the existing ditch. It is interesting to note that Mr. Roy did not know the dimensions of the existing ditch. He used three sales which he considered comparable. The sales ranged in size from 23.739 acres to 37.74 acres and occurred between February 25, 1969 and October 1, 1971. After making adjustments for time and shape of the properties, the estimated unit values varied from $3,222.00 per acre to $3,960.00 per acre. Zoning on the comparable was A-2 or A-3, single family residents, where the zoning on the subject property is A-l, single family resident. The comparable sales were situated from one-half mile to three and one-half miles from the suject property. On cross-examination Mr. Roy admitted that the Gore Road comparable was situated across the street from Plantation Pipeline Tank Farm and that the Thomas Road comparable was situated adjacent to a black, minimum value housing development.
Mr. Doiron also utilized a comparable sales approach and determined that as of November, 1973, the net value of the land taken was $8,967.00, including $1.00 for the value of the land falling within the existing ditch. Mr. Doiron adjusted this value by a time factor and gave a trial date land value of $10,100.00. Mr. Doiron used six sales which he considered comparables. The sales ranged in size from fifteen (15) acres to 33.51 acres and occurred between October 1, 1971, and February 9, 1973. Mr. Doiron arrived at a November, 1973 unit value of $3,550.00 per acre after adjusting for time, physical characteristics and location. Three of these comparables were located on Gore Road or on Blount Road immediately adjacent to or in the proximity of the Plantation Pipeline Tank Farm. Another comparable of interest is a January 24, 1972 sale of fifteen (15) acres situated on Thomas Road one mile west of the subject property which sold for a unit price of $5,000.00 per acre which Mr. Doi-ron adjusted downward to $3,800.00 per acre based upon his impression of the purchaser’s motivation for this purchase. The last two comparables are 1972 and 1973 sales of adjoining tracts of land comprising 41.77 acres situated on Lavey Lane, one and one-half miles north of the subject property which sold for a unit price of $3,000.00.
Mr. John Lejeune testified on behalf of the defendant. He utilized a comparable sales approach; and in his opinion the value of the land taken is $7,500.00 per acre or $26,797.00. Mr. Lejeune used three sales which he considered comparable, two of which sales had also been used by Mr. Doiron in his analysis. All three sales, *862 which were situated in Gibbens Place, occurred on July 23, 1971 and varied in size from 4.5 acres tó 18 acres. The unit price per acre varied from $3,500.00 to $6,111.00. Mr. Lejeune was of the opinion that due to their location the comparables were of lesser quality than the subject property. After making adjustments for time, location and tract configurations, Mr. Lejeune arrived at a present market value for the subject property of $7,500.00 per acre.
Mr. Kermit Williams also utilized a comparable sales approach and analyzed eight sales but relied principally upon four. These four sales were to the same purchaser and occurred on the same date, July 23, 1971. Three of these sales were utilized by both Doiron and Lejeune in their evaluations. The four tracts of land are contiguous and range in size from one acre to 18 acres for a total acreage of 33.58 acres. The unit price varied from $3,500.00 to $25,000.00 per acre. Mr. Williams combined these four sales to arrive at an overall unit price of $4,765.00 per acre. In his professional opinion the combination of these sales to arrive at a unit value was proper since the purchaser desired to put together a tract of land for subdivision purposes. He adequately explained the variance in unit price per tract by examining road frontage, size and tract configuration. For reasons stated Mr. Williams was also of the opinion that these Gibbens Place comparables were of poorer quality than the Thomas Road subject. After making adjustment for time and for location, Mr. Williams arrived at a unit value for the property taken of $6,200.00 per acre or a total of $22,153.00.
Thus we see from the testimony of the above witnesses that the value assigned by each to the area taken is $9,660.00 by Mr. Roy, $10,100.00 by Mr. Doiron, $27,797.00 by Mr. Lejeune, and $22,153.00 by Mr. Williams. The trial judge accepted the value of $22,153.00 as set by Mr. Williams. We think that this decision is correct and well founded in fact and law.
In a trial of an expropriation suit where the experts disagree as to the value of the land taken, the ultimate decision as to which expert to accept rests with the trier of fact, and in this regard much discretion is granted to the trial court in evaluating and weighing the testimony of each expert witness. In these instances the findings of fact by the trial court are not to be disturbed unless clearly erroneous. Parish of East Baton Rouge v. Bozeman, 260 So.2d 111 (La.App. 1st Cir. 1972).
The trial judge said that he was most impressed by the testimony of Mr. Williams and adopted his estimate as to the value of the land to be taken. We agree that Mr. Williams’ testimony is based on well established facts and is well reasoned, and considering all of the relevant factors, we cannot say that the trial court was manifestly in error in awarding $22,153.00 to the defendant, especially when comparing the size and location of the expropriated property with the various comparables.
We next consider plaintiff’s contention that the trial court was in error in awarding defendant damages in the sum of $34,100.00. This sum represents the difference in costs of bridging the existing ditch and the proposed canal. Several witnesses, including Mr. Addison, an engineer who appeared as witness for the plaintiff, testified that the existing ditch could be bridged for an estimated cost of $1,000.00. On the new trial granted on this issue alone, the Court upgraded this estimate to $1,100.00 for increased cost based upon the testimony of Mr. Rockhold, a civil engineer and construction consultant.
Both Mr. Roy and Mr. Doiron, experts for the plaintiff, were of the opinion that the present ditch could be spanned with a bridge costing $14,000.00 and that the proposed canal could be spanned with a bridge costing $21,000.00. Each witness estimated severance damages at $7,000.00. Both based their opinions upon conversations *863 held with employees of the Parish of East Baton Rouge. Mr. Roy admitted that the person with whom he spoke was not an engineer and was not qualified to give an opinion as to the bridge requirements and costs. Neither Mr. Roy nor Mr. Doiron are qualified to render such an opinion independently.
Mr. Lejeune and Mr. Williams, experts for the defendant, both testified that the cost of a bridge required for crossing the proposed canal would be $40,000.00. Mr. Lejeune based his opinion upon a conversation held with Mr. Rockhold who also appeared as a witness in this case. Mr. Williams based his opinion upon a conversation held with an unidentified person who was allegedly qualified to render such an opinion. Neither of these witnesses are qualified to independently give such an opinion.
Mr. Lloyd J. Rockhold, a civil engineer and construction consultant, who appeared on behalf of the defendant, testified on the original trial that the cost of a pre-cast concrete bridge required to span the proposed canal would be $32,000.00. Mr. Rockhold’s opinion was based upon conversations with several persons, the most significant of whom was a Mr. Pierson, a contractor who was at the time in the process of building an almost identical bridge. On the new trial Mr. Rockhold Upgraded this estimate by a factor of ten percent (10%) due to increase cost or a total estimate of $35,200.00.
On the new trial Mr. Vincent G. Russo appeared on behalf of the defendant and was recognized as an expert in bridge design and as a qualified civil engineer. This witness testified that the most economical bridge for spanning the proposed canal would be a pre-set concrete slab bridge. After testifying in great detail as to the specifications and requirements of this bridge, this witness estimated the cost of the bridge to be $36,255.50, and after adding ten percent (10%) for contingencies arrived at a total cost of $39,881.05.
The trial judge accepted the cost estimate supplied by Mr. Rockhold and held that the bridge across the proposed canal would cost $35,200.00. From this cost the court subtracted the cost of spanning the present ditch, or $1100.00, and awarded the defendant damages in the sum of $34,100.-00. We find no error in this conclusion, as it is readily apparent from our review that the opinion of Mr. Rockhold was grounded upon well established facts and supported by sound reasoning. Additionally, there is very little difference in the values arrived at by Mr. Rockhold and Mr. Russo whose opinion was equally well founded. We find no abuse of discretion here.
For the foregoing reasons we find that the awards by the trial court of just compensation and severance damages to the defendant were not manifestly excessive, accordingly, we affirm. All costs of these proceedings, both in the trial court and in this court, are to be borne by plaintiff.
Affirmed.